QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Frederick A. Lorig (Bar No. 057645)
  fredlorig@quinnemanuel.com
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiffs Olivia Van Iderstine and Mitch Oberstein, on behalf of themselves and all those similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Olivia Van Iderstine and Mitch Oberstein, on behalf of themselves and all those similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>　　　　Defendants. | CASE NO. 2:20-cv-03888-GW-GJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR DISCOVERY RELATED TO WHETHER A VALID ARBITRATION AGREEMENT EXISTS**<br><br>The Honorable George H. Wu |

**PLAINTIFFS' MOTION FOR DISCOVERY RELATED TO WHETHER A VALID ARBITRATION AGREEMENT EXISTS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ........................................................................................................ 3

DEFENDANTS SHOULD BE REQUIRED TO PROVIDE LIMITED DISCOVERY REGARDING WHETHER A VALID ARBITRATION EXISTS ........................................................................................................................ 5

CONCLUSION ........................................................................................................... 9

**PRELIMINARY STATEMENT**

This class action concerns an anticompetitive scheme by Defendants Ticketmaster, LLC ("Ticketmaster") and Live Nation Entertainment, Inc. ("Live Nation") to monopolize the primary and secondary markets for concert ticketing services at major concert venues across the United States. Among other things (as detailed in filings from the Antitrust Division of the Department of Justice and in Plaintiffs' complaint here), Defendants repeatedly violated a consent decree they entered with the Department of Justice in 2010, which was meant to prevent the exact type of unrivaled dominance they now command. Defendants also engaged in numerous other anticompetitive acts detailed in the complaint, the net result of which has been enormous profits over the past decade.

This motion concerns whether, in connection with their pending motion to compel arbitration, Defendants should be required to provide targeted discovery related to whether a valid arbitration agreement exists. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (noting the Federal Arbitration Act ("FAA") "provides for discovery and a full trial" where the agreement to arbitrate is in dispute). Defendants have refused to provide such information, notwithstanding the fact that courts in this Circuit and others have allowed discovery on this exact issue, as well as issues such as whether an arbitration agreement is unconscionable. *E.g.*, *Hamby v. Power Toyota Irvine*, 798 F. Supp. 2d 1163, 1165 (C.D. Cal. 2011) (granting motion to compel discovery on the issue of whether arbitration agreement was unconscionable); *see also Arena v. Intuit, Inc.*, 2020 WL 1189849, at *5 (N.D. Cal. Mar. 12, 2020) (court previously granted motion to compel discovery on issue of whether there was assent to an arbitration clause under similar "sign in" and "sign up" processes as here).

In fairness, Plaintiffs submit that they should receive such discovery before opposing Defendants' motion to compel arbitration since this information is solely in Defendants' hands. As brazen as their scheme has been, Defendants have never

been held fully accountable for it by consumers. As they have in other cases, Defendants argue that Plaintiffs agreed to arbitration clauses that are buried in Terms of Use on www.ticketmaster.com, www.livenation.com, and the Ticketmaster mobile application. (ECF No. 25-1, Defendants' Motion to Compel Arbitration, at 7-13.) The Terms of Use are presented to users in a "browsewrap"-type format that does not affirmatively require consumers to read the Terms, or indicate they have read them, before making a purchase. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (denying arbitration based on alleged acceptance of browsewrap terms of use).

The discovery Plaintiffs seek is virtually identical to that which the Court recently permitted in *Arena v. Intuit, Inc.*, where based in part on Court-ordered discovery, Judge Breyer found that a website layout strikingly similar to Ticketmaster's failed to afford consumers reasonable notice of its terms of use, in part due to data showing that very few users ever read those terms of use. 2020 WL 1189849, at *5 (N.D. Cal. Mar. 12, 2020). Similarly, Plaintiffs here seek the number of "clicks" for each sign in to ticketmaster.com and livenation.com, as well as the number of clicks on the Terms of Use Defendants cite in their motion. Plaintiffs intend to show on opposition that ticketmaster.com and livenation.com are designed in a way to actively dissuade consumers from knowing or understanding that the Terms of Use are something they can or should read. The requested discovery thus relates directly to whether Plaintiffs had reasonable notice of the Terms of Use, and therefore whether Plaintiffs assented to any arbitration agreement contained in the Terms of Use.

This is a fact-laden, threshold dispute that carries profound consequences, and, to the best of Plaintiffs' knowledge, has never been presented to any court regarding these Terms of Use, whether in this Court's previous *Dickey* decision or in the Ninth Circuit's recent unpublished (and therefore non-precedential) *Lee* decision. (ECF No. 28, O'Mara Decl. Exs. B & C) (*Dickey* and *Lee* opinions). *Lee*

did not cite nor distinguish the earlier published decision in *Wilson*. Plaintiffs also anticipate raising other arguments that were not previously briefed in *Dickey* or *Lee*, as described more fully below, including that the Terms of Use and their delegation clause are unconscionable under a recent decision from the California Supreme Court rejecting arbitration because of an unconscionable contract of adhesion. *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019), *cert. denied*, 2020 WL 3038293, at *1 (June 8, 2020). Plaintiffs will also argue that their claims are subject to an express exception to arbitration for claims involving the "conditional license" Defendants grant to consumers who purchase tickets on Ticketmaster's website and mobile application, because Plaintiffs allege that Defendants abuse the conditional license in order to stifle competition in the secondary market for concert ticketing services. *Infra* at 3-4.

Plaintiffs therefore respectfully request that the Court authorize this limited, specific discovery into the underlying facts of alleged assent to arbitration and order the parties to submit a proposed schedule for the completion of such discovery, subject to the Court's approval. *See Egan v. Live Nation Worldwide, Inc.*, 764 F. App'x 204, 208 (3d Cir. 2019) ("District courts should decide motions to compel arbitration using a summary-judgment standard only when there is no genuine dispute of material fact. When there is such a dispute, the court should hold a trial to resolve it.").

## BACKGROUND

This case is at its earliest stages. Plaintiffs filed their complaint on April 28, 2020. (ECF No. 1.) Defendants then disclosed that they planned to move to compel arbitration, and the parties worked cooperatively on a briefing schedule for Defendants' motion, which they filed on June 19, 2020. (ECF No. 25.)

In the course of discussing the briefing schedule, Plaintiffs explained to Defendants the grounds on which they will likely oppose Defendants' motion. These include, among other arguments, that the Terms of Use lack essential terms—

and are therefore invalid as a matter of law—because they do not identify the supposedly contracting Ticketmaster or Live Nation entities;[1] in any event, Live Nation Entertainment, Inc., the parent company, is not a party to any arbitration agreement with Plaintiffs; the "conditional license exception" to the arbitration agreement—which permits aggrieved consumers to file suit in this Court—applies to the claims here; the Terms of Use and their delegation clause, as demonstrated by Defendants' motion to compel, are unconscionable; and, as most relevant to this motion, Plaintiffs lacked actual or constructive notice of the Terms of Use, and thus did not assent to any arbitration agreement contained in the Terms of Use.  To help streamline the briefing on Defendants' motion, Plaintiffs requested on May 28 (*i.e.*, three weeks before Defendants' motion was due) that Defendants provide information related to whether a valid arbitration agreement exists, including the following data:

- the total number of times users signed into www.ticketmaster.com from January 1, 2010 to the present;
- the total number of times users clicked to view the Terms of Use on www.ticketmaster.com or any other website Defendants believe relevant to the alleged arbitration agreements in this case during the same time period;
- the total number of times users signed in to the Ticketmaster mobile application during the same time period; and
- the total number of times users clicked to view the Terms of Use in the Ticketmaster mobile application during the same period.

In a subsequent meet and confer, Plaintiffs explained that this information is relevant because it will provide empirical evidence regarding whether

---

[1] References to "Ticketmaster's" or "Defendants'" Terms of Use throughout this brief should not be read to suggest otherwise.

Ticketmaster's website and app do, in fact, provide users with reasonable notice of the Terms of Use.  If it turns out that, as Plaintiffs suspect, the vast majority of users do *not* view the Terms of Use, that would tend to show that the website and app provide insufficient notice of the Terms of Use, and thus the arbitration agreement contained in it.

In response to Plaintiffs' requests, Defendants have provided some basic information about Plaintiffs' ticket purchases (*i.e.*, the dates of certain purchases and the specific websites on which Defendants believe the purchases were made).  But Defendants have otherwise refused to engage in meaningful discovery, including on the vital issue of whether the Ticketmaster app and ticketmaster.com provide reasonable notice of the Terms of Use.  In other words, Defendants' position appears to be that Plaintiffs and the Court should take their arguments that consumers had reasonable notice of their Terms of Use on blind faith, rather than engaging in independent fact-finding based on hard evidence showing that Defendants designed the website and app to push consumers past the Terms of Use and their arbitration clause without understanding the supposed import of that decision.  As set forth below, the Court should reject this unfair and one-sided approach to arbitration motion practice, just as courts in this Circuit and others have done.

**DEFENDANTS SHOULD BE REQUIRED TO PROVIDE LIMITED DISCOVERY REGARDING WHETHER A VALID ARBITRATION EXISTS**

Defendants bear the burden of showing that Plaintiffs assented to a valid arbitration agreement.  *See, e.g.*, *Wilson*, 944 F.3d at 1219 ("the party seeking to compel arbitration[] must prove the existence of a valid agreement by a preponderance of the evidence") (citations omitted).  This is a fact-intensive dispute. *See, e.g.*, *Metter v. Uber Techs., Inc.*, 2017 WL 1374579, at *4 (N.D. Cal. Apr. 17, 2017) ("Metter has raised a genuine issue of fact concerning his notice of, and assent to, Uber's terms of service.  It is therefore improper to conclude as a matter of

law that Metter had actual notice of Uber's terms of service, or that he was on inquiry notice of the terms of service and affirmatively assented to them, and the motion to compel arbitration must be denied."); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 366 (E.D.N.Y. 2015) (describing the "central factual-legal question in the case" as whether plaintiffs were "given effective notice of the need to make inquiry ('inquiry notice') of the 'terms of use'"). Because this threshold issue is in dispute, Plaintiffs are entitled to discovery on this subject. *See Alvarez v. T-Mobile USA, Inc.*, 822 F. Supp. 2d 1081, 1085 (E.D. Cal. 2011) ("With respect to the first threshold issue, formation of an agreement, [plaintiff] is entitled to discovery.").

The right to such discovery flows from the FAA itself, as well as from the Federal Rules of Civil Procedure. The FAA allows courts to grant motions to compel arbitration *only* after "hear[ing] the parties" and being "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4; *see also Simula*, 175 F.3d 716. Indeed, the Third Circuit recently held that a district court was required to "hold a trial to resolve" the issue of whether a consumer entered into an arbitration agreement with one of Defendants' affiliates. *Egan*, 764 F. App'x at 208.

Here, Plaintiffs are not even seeking the full trial to which they are entitled under the FAA; they are seeking limited discovery related to whether an enforceable agreement to arbitrate exists. Case law from this circuit and others confirms Plaintiffs are entitled to this information. *E.g.*, *Hicks v. Citigroup, Inc.*, 2012 WL 254254, at *1 (W.D. Wash. Jan. 26, 2012) ("Courts have permitted limited discovery as to arbitrability where parties have placed the validity of the arbitration agreement in issue."); *Hamby*, 798 F. Supp. 2d 1163 (allowing discovery on the issue of whether arbitration agreement was unconscionable); *Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*, 234 F. Supp. 2d 291, 296 (S.D.N.Y. 2002) ("Limited discovery may help determine whether or not Hovensa had actual knowledge of and

acquiesced in the terms of the Charter Party and, therefore, perhaps should be bound by its arbitration provision.").

Discovery regarding whether a valid arbitration agreement exists is all the more important in light of recent decisions that call into question the type of "browsewrap" or "modified browsewrap" Terms of Use at issue here. In *Wilson v. Huuuge, Inc.*, for example, the Ninth Circuit affirmed the denial of a motion to compel arbitration, and emphasized that "the existence of mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement." 944 F.3d at 1219. *Wilson* made clear that district courts must analyze "the content and overall design" of the at-issue website or app to ensure that it affords consumers reasonable notice before granting a motion to compel arbitration. *Id.* at 1220. *Wilson* further suggested that Terms of Use like Defendants' must be scrutinized particularly closely, because they do not affirmatively require consumers to read their Terms and thus run a high risk that consumers will miss them entirely or fail to grasp their import. *Id.* at 1221 (explaining that "[e]ven where the terms [of use] are accessible via a conspicuous hyperlink in close proximity to a button necessary to the function of the website, courts have declined to enforce such agreements" and noting that the at-issue terms contained "no box for the user to click to assent to the Terms"). Significantly, the Ninth Circuit chose not to publish *Lee* (on which Defendants rely) and instead published *Wilson* (which Defendants do not mention in their motion to compel arbitration).

Following similar reasoning to *Wilson*, a court in the Northern District of California recently granted a motion to compel discovery related to whether a valid arbitration agreement existed, and then denied a motion to compel arbitration based on what that discovery showed. In *Arena v. Intuit, Inc.*, the district court found that a website layout strikingly similar to Ticketmaster's failed to afford consumers reasonable notice of its terms of use, in part due to data showing that very few users ever read those terms of use. 2020 WL 1189849, at *5 (N.D. Cal. Mar. 12, 2020)

("The fact that so few users actually clicked on the hyperlink supports the inference that many of them did not notice it . . . . [B]ecause this evidence suggests users were not on notice of the Terms, it is nonetheless relevant."). Notably, *Intuit* recognized that websites can play mental tricks on users, such that users do not realize they are supposedly agreeing to terms of use, even though the terms of use are supposedly presented in a way that the defendant argues provides constructive notice. *Id.* at *4-5.

Decisions like *Intuit* confirm that the issue of whether consumers assented to Terms of Use like Defendants' is bound up in factual disputes that cannot be resolved absent at least some discovery. As the Magistrate Judge there put it: "The Court might find it useful to know how many people . . . clicked through to the Terms of Service on Intuit's website. . . . viewing the website under the clinical conditions of a courtroom is different from the experience of an actual user." *See In re Intuit Free File Litig.*, Case No. 19-cv-02546-CRB (SK), Dkt. 106 (Dec. 6, 2019) (order granting motion to compel discovery) (attached hereto as Exhibit A).[2]

It also bears emphasis that the requested discovery will impose no significant burden on Defendants. It will consist of a relatively small document or data production (such as data showing what percentage of users click on the Terms of Use and documents regarding the design of and changes to the Terms of Use over time). It will also include interrogatories on these subjects, and depositions of the defense witnesses that provided declarations in support of Defendants' motion. It will not meaningfully prolong the resolution of this case, because any such

---

[2]  Plaintiffs recognize the Court granted a motion to compel arbitration in *Dickey v. Ticketmaster*, but respectfully submit that their arguments here will differ from those in *Dickey*, including because Plaintiffs' arguments are based on recent case law that was not available when *Dickey* was decided. (ECF No. 28, O'Mara Decl. Ex. B.)

discovery can likely be completed within 30-60 days, and Plaintiffs' opposition brief can be filed within a reasonable time period after that (*i.e.*, two weeks).

Relatedly, since the case is still in its infancy and has been proceeding expeditiously, there is no real prejudice to either side or to the Court from any brief delay occasioned by tailored, arbitration-related discovery. In contrast, the prejudice to Plaintiffs of being deprived of their FAA-guaranteed right to meaningfully dispute that they ever agreed to arbitrate their claims against Defendants is substantial. *See AT & T Techs., Inc. v. Commcn's Workers of Am.*, 475 U.S. 643, 648 (1988) ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); *accord Benaroya v. Willis*, 232 Cal. Rptr. 3d 808, 813 (2d Dist. 2018) ("courts [] recognize that the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived. Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration cannot replace an agreement to arbitrate") (citations omitted). Respectfully, the Court should err on the side of allowing discovery to ensure this crucial issue is fully explored before it is presented to the Court for resolution.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an order authorizing limited discovery related to Defendants' motion to compel arbitration, including the issue of whether consumers had reasonable notice of the Terms of Use. As explained above, such limited discovery will include document or data productions related to what percentage of users click on the Terms of Use and regarding the design of and changes to the Terms of Use over time; interrogatories regarding the same subjects; and depositions of the defense witnesses that provided declarations in support of Defendants' motion to compel arbitration. Plaintiffs further request that the parties be required to submit a joint proposed schedule for the completion of such discovery within seven (7) days of the entry of an order resolving this motion.

| | | |
|---|---|---|
| 1 | DATED: June 24, 2020 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | |
| 4 | | By   /s/ *Frederick A. Lorig* |
| 5 | | Frederick A. Lorig<br>Kevin Y. Teruya |
| 6 | | Adam B. Wolfson |
| 7 | | Attorneys for Plaintiffs Olivia Van Iderstine and Mitch Oberstein |
| 8 | | |