QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Frederick A. Lorig (Bar No. 057645)
  fredlorig@quinnemanuel.com
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiffs Olivia Van Iderstine and
Mitch Oberstein, on behalf of themselves and all
those similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Olivia Van Iderstine and Mitch Oberstein, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | CASE NO. 2:20-cv-03888-GW-GJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO COMPEL ARBITRATION-RELATED DISCOVERY**<br><br>The Honorable George H. Wu<br><br>Hearing Date: November 2, 2020<br><br>Hearing Time: 8:30 am |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ................................................................................. 2

ARGUMENT ..................................................................................... 3

I.     THE REQUESTED DISCOVERY IS RELEVANT AND
       DEFENDANTS HAVE PROVIDED NO EVIDENCE IT IS
       BURDENSOME ......................................................................... 3

II.    DEFENDANTS' PRIVILEGE OBJECTION FAILS ..................................... 6

       A.     Defendants Present No Reason How and Why *All* Terms of Use-
              Related Materials Must Be Privileged ...................................... 7

              1.     Defendants' Attorney-Client Privilege Objection Fails ............ 7

              2.     Defendants' Work-Product Objection Fails ............................ 9

       B.     Defendants Waived Privilege.................................................. 10

       C.     Defendants' Refusal to Provide a Privilege Log Negates Their
              Ability to Assert Privilege.................................................... 12

CONCLUSION................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

<u>CASES</u>

*Alliance Atlantis Releasing Ltd. v. Bob Yari Productions*,
2009 WL 1672591 (C.D. Cal. May 14, 2009) ................................................ 8

*Am. Dental Ass'n v. Khorrami*,
2003 WL 24141019 (C.D. Cal. July 14, 2003) .............................................. 13

*Banuelos v. City of San Bernardino*,
2018 WL 6131187 (C.D. Cal. Jan. 11, 2018) ................................................. 5

*Bess v. Cate*,
2008 WL 5100203 (E.D. Cal. Nov. 26, 2008) ................................................ 13

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ........................................................................... 12

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*,
408 F.3d 1142  (9th Cir. 2005) ................................................................... 6, 13

*Chevron Corp. v. Donziger*,
2013 WL 6182744 (S.D.N.Y. Nov. 21, 2013) ............................................... 11

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ......................................................................... 10

*Clarke v. Am. Commerce Nat'l Bank*,
974 F.2d 127 (9th Cir. 1992) ............................................................................ 6

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ............................................................. 4

*Cullinane v. Uber Techs., Inc.*,
893 F.3d 53 (1st Cir. 2018) ............................................................................... 4

*Curtin v. Cty. of Orange*,
2017 WL 5593025 (C.D. Cal. Mar. 13, 2017) ................................................. 6

*Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*,
2019 WL 2621921 (C.D. Cal. May 1, 2019) ................................................ 7, 8

*Datel Holdings Ltd. v. Microsoft Corp.*,
2011 WL 866993 N.D. Cal. Mar. 11, 2011) ................................................... 9

*Davis v. Fendler*,
650 F.2d 1154 (9th Cir. 1981) .......................................................................... 6

*Engurasoff v. Zayo Grp. LLC*,
2015 WL 335793 (N.D. Cal. Jan. 23, 2015) ................................................... 9

*Google Inc. v. IPValue Mgmt. Inc.*,
    2011 WL 13257662 (N.D. Cal. Apr. 28, 2011) ................................................ 8

*Griffith v. Davis*,
    161 F.R.D. 687 (C.D. Cal. 1995) ................................................................ 9

*Johnson v. Runnels*,
    2009 WL 900755 (E.D. Cal. Mar. 31, 2009) .................................................. 12

*Matter of Fischel*,
    557 F.2d 209 (9th Cir. 1977) ...................................................................... 8

*Natural-Immunogenics Corp. v. Newport Trial Grp.*,
    2018 WL 6168035 (C.D. Cal. June 12, 2018) ................................................ 11

*Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*,
    2012 WL 12888106 (C.D. Cal. Dec. 10, 2012) .............................................. 12

*NetCurrents Info. Servs. Inc. v. Dow Jones & Co.*,
    2008 WL 11338879 (C.D. Cal. June 11, 2008) .............................................. 12

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................................ 4, 5

*Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch Pierce Fenner & Smith*,
    265 F.R.D. 589 (N.D. Fla. 2010) ................................................................ 13

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2009) .................................................................. 12

*Scotti v. Tough Mudder Inc.*,
    97 N.Y.S.3d 825 (N.Y. Sup. Ct. 2019) ........................................................ 5

*Sherman v. CLP Resources, Inc.*,
    2014 WL 12850524 (C.D. Cal. Sept. 10, 2014) ............................................ 12

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
    2020 WL 3050777 (C.D. Cal. Feb. 18, 2020) .......................................... 9-10

*Unihan Corp. v. Max Grp. Corp.*,
    2010 WL 11549384 (C.D. Cal. Oct. 12, 2010) .............................................. 12

*United States v. Amlani*,
    169 F.3d 1189 (9th Cir. 1999) .................................................................. 10

*United States v. ChevronTexaco Corp.*,
    241 F. Supp. 2d 1065 (N.D. Cal. 2002) ........................................................ 8

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ...................................................................... 7

*United States v. Richey*,
    632 F.3d 559 (9th Cir. 2011) ...................................................................... 9

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) .......................................................................... 6

*Walters Wholesale Elec. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    247 F.R.D. 593 (C.D. Cal. 2008) ................................................... 11

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
    647 F.2d 18 (9th Cir. 1981).............................................................. 6

*Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019) ......................... 4, 5

1

**PRELIMINARY STATEMENT**

2   This is the ***third*** time Plaintiffs have needed to brief issues surrounding the

3   same discovery.  The Court has twice recognized the relevance of the materials

4   Plaintiffs seek, including documents and interrogatories related to the design of

5   Defendants' websites with respect to the display of their Terms of Use.  As the

6   Court most recently stated:  "Plaintiffs also seek (and the Court will continue to

7   allow) – any internal UX-design documents involving the display of the TOS and

8   other related documentation of the design process."  ECF No. 46, at 4.

9   Ignoring this, Defendants again refuse to engage in the discovery process the

10   Court authorized.  Defendants' latest tactic is to assert, while refusing to provide any

11   privilege log or search for or review responsive documents and information, that all

12   the discovery the Court said it would allow related to the Terms of Use is covered

13   by the attorney-client privilege.  Based on this baseless privilege objection,

14   Defendants refuse to produce a single document, respond to a single interrogatory,

15   or even produce a privilege log so their claim of privilege can be tested.  *See* Ex. A

16   (Email Correspondence) at 2-3.

17   Apparently, Defendants do not believe the usual rules requiring a privilege

18   log apply to them.  But without a privilege log, Defendants' objection is pure,

19   unsupported boilerplate:  Defendants claim they have not even searched for

20   responsive materials, and they have not provided anything to substantiate their

21   objection.  According to Defendants, everything about the Terms of Use is a

22   privileged black box that is off limits from any discovery whatsoever—except, of

23   course, for self-serving testimony from Live Nation Entertainment Inc.'s ("LNE's")

24   in-house counsel (Ms. Tobias) that Defendants chose to selectively disclose in

25   support of their arbitration motion.

26   Defendants' privilege objection is baseless.

27

28

*First*, design choices about how to present the Terms of Use to users are quintessential business decisions that are not subject to privilege, even if in-house lawyers are involved in the design of the Terms of Use.

*Second*, to the extent any privilege ever attached, Defendants waived it with *the declaration of an in-house lawyer*. Having self-servingly disclosed this testimony from in-house counsel as a "sword," Defendants cannot now invoke privilege as a "shield" to prevent the discovery necessary to test those assertions.

*Third*, it should go without saying that any privilege assertions must be substantiated in a privilege log. Defendants' bold refusal to do so negates their privilege claim, particularly because they admit they have never actually collected or reviewed responsive documents.

More basically, Defendants' blanket privilege objection should be recognized for what it is: a clear attempt to make an end-run around the Court's Order authorizing discovery. It has now been more than two months since the Court authorized this discovery, and Defendants are still steadfastly objecting to producing any documents or responding to any of Plaintiff's interrogatories.

In light of this, Plaintiffs respectfully request that the Court overrule Defendants' privilege and other unsubstantiated objections and order them pursuant to Rule 37(a)(1) to produce responsive documents, and provide full answers to Plaintiffs' interrogatories, within 30 days of ruling on this motion.

## BACKGROUND

In June, Plaintiffs moved for limited, assent-related discovery, and the Court granted that motion on August 3, 2020. ECF No. 35. On September 17, the Court granted Defendants' motion for reconsideration on "click data" discovery, but reaffirmed in that ruling that Plaintiffs could continue to pursue other discovery related to users' constructive notice of the Terms of Use on the ticketmaster.com and livenation.com websites. ECF No. 46, at 4.

However, despite this ruling and several additional rounds of meet and confers, Defendants continued to refuse to meaningfully engage in the discovery process, this time based on a purported "privilege" objection. Tellingly, Defendants did not mention this objection in their opposition to Plaintiff's initial discovery motion, nor at either of the prior hearings. They instead focused on relevance and burden-based objections. *See* ECF No. 32 (Opposition to Plaintiffs' Motion for Discovery), at 5-11 (objecting based on relevance, not privilege); Ex. B (Aug. 3, 2020 Hr'g Tr.) at 4:10-14 (defense counsel: "what I would really like to spend my time today discussing with the Court is the burden issues"); Ex. C (Sept. 17, 2020 Hr'g Tr.) at 11:6-10 (no mention of privilege objection).

To date, the only discovery Defendants have agreed to provide is a limited deposition of Ms. Tobias. Although the parties have agreed to defer finalizing the logistics for that deposition until the Court rules on this motion, the scope of the deposition—*i.e.*, which subjects are privileged—appears bound up in the present dispute to some extent. Ex. A (Email Correspondence) at 3, 6. Thus, resolving Defendants' privilege objection is necessary to move forward with Ms. Tobias's deposition as well.

## ARGUMENT

## I.   THE REQUESTED DISCOVERY IS RELEVANT AND DEFENDANTS HAVE PROVIDED NO EVIDENCE IT IS BURDENSOME

The requested discovery falls squarely within the topics previously authorized by the Court, such as "document production/interrogatories on . . . the design process for the desktop/mobile UI presenting the TOSs." ECF No. 35, at 5; *see also* ECF No. 46, at 4. The requested discovery includes:

***Notice***:  Request for Production ("RFP") No. 4 and Interrogatory ("Rog.") No. 1 (including its subparts) concern whether users notice or understand the Terms of Use. *See* Exs. D (RFPs) & E (Rogs). Such materials are relevant for the reasons discussed in the Court's prior Orders, because they go to "the display of the TOS

1  and other related documentation of the design process."  ECF No. 46, at 4; *see also*

2  ECF No. 35, at 5.

3    ***Underlining***:  RFP No. 5 and Rog. Nos. 1(a) and (c) concern the possibility

4  or desirability of underlining the hyperlinks to the Terms of Use.  Such design

5  choices are relevant because users are more likely to notice hyperlinks that are

6  underlined.  *See Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764-65 (N.D.

7  Cal. 2019) (lack of underlining relevant to constructive notice); *see also Cullinane v.*

8  *Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) (hyperlinks were deficient

9  because they were not underlined; noting hyperlinks are "commonly blue and

10  underlined" and recognized by reasonably prudent consumers when visible in that

11  customary manner) (citation omitted).

12    ***Decision Not to Use Clickwrap***:  RFP Nos. 6 & 8, and Rog. Nos. 1(b), 3 & 4

13  concern Defendants' decision *not* to require users to check a box indicating their

14  assent to the Terms of Use—*i.e.*, their decision not to use "clickwrap."  This design

15  choice is important because Defendants themselves employ this design choice on

16  aspects of their own websites, and one of Defendants LNE's other subsidiaries (a

17  Ticketmaster affiliate) *does* require users to affirmatively assent to its terms of use

18  in certain circumstances.  This shows that Defendants are aware and capable of

19  using "clickwrap" when it suits them.  Plaintiffs are entitled to understand why

20  Defendants deliberately employed a different approach for the ticketmaster.com and

21  livenation.com sign-up and sign-in processes.  *See Nguyen v. Barnes & Noble Inc.*,

22  763 F.3d 1171, 1176-77 (9th Cir. 2014) (lack of clickwrap relevant to constructive

23  notice); *see also Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019)

24  ("Instead of requiring a user to affirmatively assent, Huuuge chose to gamble on

25  whether its users would have notice of its Terms.  The odds are not in its favor.").

26    ***Countdown Timer***:  RFP No. 7 and Rog. No. 1(d) concern the countdown

27  timer that is displayed to users on certain screens on the Ticketmaster and Live

28  Nation websites.  These requests are relevant because they go to the overall "design

1   and content of [Defendants'] website[s]," including whether users are distracted

2   from noticing the Terms of Use by the countdown timer.  *Nguyen*, 763 F.3d at 1177;

3   *see also Wilson*, 944 F.3d at 1221 ("Similarly, courts decline to enforce agreements

4   where the terms are available only if users . . . parse through confusing or distracting

5   content and advertisements . . . .").

6   **_Above the Fold_**:   RFP No. 9 and Rog. No. 2 concern Defendants' decision in

7   June 2019 to move the reference to the arbitration clause within the Terms of Use

8   "above the fold," when it previously appeared several pages deep in the Terms of

9   Use.  These requests are relevant to whether users had notice of the arbitration

10  clause prior to June 2019.  *See* ECF No. 33 (Plaintiffs' Reply in Support of Motion

11  for Discovery), at 10 (discussing relevance of this subject); *see also Scotti v. Tough*

12  *Mudder Inc.*, 97 N.Y.S.3d 825, 835 (N.Y. Sup. Ct. 2019) (denying motion to compel

13  arbitration where header "ma[de] no reference to the arbitration provision").

14          Overall, these requests are all relevant to constructive notice.  They all seek

15  information regarding design choices that minimize the likelihood that users notice

16  the Terms of Use, understand their significance, or realize they contain an

17  arbitration clause.  *See Wilson*, 944 F.3d at 1220 ("content and overall design"

18  relevant to constructive notice); ECF No. 35, at 5; ECF No. 46, at 4.

19          Defendants have provided no evidence—such as search-term hit reports or

20  other tangible metrics—that complying with these requests would be burdensome,

21  despite having had months to do so.  *See, e.g.*, *Banuelos v. City of San Bernardino*,

22  2018 WL 6131187, at *4 (C.D. Cal. Jan. 11, 2018) (Wu, J.) (disapproving of

23  "boilerplate" burden objections, "especially when a party fails to submit any

24  evidentiary declarations supporting such objections") (citation omitted).  Because

25  Plaintiffs' requests are relevant under the Court's prior Orders, and Defendants

26  identify no meritorious burden objections to Plaintiffs' requests, the only issue is

27

28

1 whether responsive materials can be withheld on the basis of Defendants'

2 categorical privilege objection.[1]

3 **II.    DEFENDANTS' PRIVILEGE OBJECTION FAILS**

4 　　"As with all evidentiary privileges, the burden of proving that the attorney-

5 client privilege applies rests . . . with the party asserting it." *Weil v. Inv./Indicators,*

6 *Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).  "[B]lanket assertions of

7 the privilege are extremely disfavored," and "[t]he privilege must ordinarily be

8 raised as to each record sought to allow the court to rule with specificity." *Clarke v.*

9 *Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (citation omitted).

10 "[B]oilerplate objections or blanket refusals . . . are insufficient to assert a

11 privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of*

12 *Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005); *see also Curtin v. Cty. of Orange*, 2017

13 WL 5593025, at *2 (C.D. Cal. Mar. 13, 2017) ("blanket objection[s]" are

14 "insufficient and improper") (quoting *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th

15 Cir. 1981)).  Facts of course are not privileged, and even if in-house attorneys are

16 the only ones who know those facts, that does not shield those facts from discovery.

17 *E.g., Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only

18 protects disclosure of communications; it does not protect disclosure of the

19 underlying facts by those who communicated with the attorney.").

20 　　Here, "boilerplate objections" and "blanket refusals" are *all* Defendants have

21 provided.  These are woefully insufficient to carry Defendants' burden.

22

23 　　[1]  Plaintiffs previously served document requests seeking click data and related

24 documents, but have agreed to defer those requests per the Court's September 17 Order.  ECF No. 46.  Plaintiffs have also served 30(b)(6) deposition notices on

25 Defendants, and a deposition notice for Mr. Moon, who submitted a declaration in support of Defendants' motion.  ECF No. 27.  Defendants have objected to these

26 depositions as well.  However, Plaintiffs cannot determine whether these depositions

27 are necessary without receiving further discovery, and the parties thus appear to agree that any disputes regarding those depositions can be addressed after the Court

28 resolves the present motion.  *See* Ex. A at 3.

### A. __Defendants Present No Reason How and Why *All* Terms of Use-Related Materials Must Be Privileged__

Defendants claim that any materials concerning the Terms of Use are privileged because in-house lawyers are involved in drafting the Terms of Use. *See* Ex. A; Exs. F & G (Defendants' Responses and Objections to Plaintiffs' RFPs and Rogs). Defendants reason that, because the Terms of Use are a "legal contract," any discussions about how to present the hyperlinks to the Terms of Use to users must also reflect legal advice. *Id.* Defendants claim that such materials are protected by both the "attorney-client privilege" and the "work product" doctrine. Both arguments fail because Defendants have not established that any materials related to the Terms of Use reflect legal advice, as opposed to business advice or facts.

#### 1. Defendants' Attorney-Client Privilege Objection Fails

The test for attorney-client privilege is not whether a lawyer was *involved* in drafting the Terms of Use; it is whether specific communications were "made for the purpose of giving and receiving legal advice." *See Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2019 WL 2621921, at *1-2 (C.D. Cal. May 1, 2019); *see also United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (privilege claims must be made "on a . . . document-by-document basis; a blanket claim of privilege is unacceptable") (citation omitted). Defendants cannot meet that standard because the design of the Terms of Use is a business decision, not a legal one. *E.g.*, *Cusack-Acocella*, 2019 WL 2621921, at *2 ("The privilege does not extend to business advice or other non-legal advice, even if it is provided by a client's attorney.").

Decisions such as whether to require users to check a box indicating their assent to the Terms of Use, or whether to underline hyperlinks to the Terms of Use, are business decisions because they bear on how to present a public-facing website to users. That is a quintessential "business goal" that doubtless includes many non-legal concerns, such as the aesthetics of the websites in which the Terms of Use are

1   contained.  *See Google Inc. v. IPValue Mgmt. Inc.*, 2011 WL 13257662, at *1 (N.D.

2   Cal. Apr. 28, 2011) (advice not privileged where it primarily furthered "business

3   goals").  Proving as much, the ticketmaster.com website contains an entire section

4   touting its design choices and "visual identity"—something that would constitute a

5   clear waiver if, contrary to all evidence, the design process was run purely by

6   lawyers providing legal advice rather than non-lawyers making design decisions.[2]

7   At bottom, Defendants are improperly attempting to "place a cloak of secrecy

8   around" routine business decisions, such as what font size or color to utilize for the

9   Terms of Use-related links and site language, simply by involving lawyers in that

10  process.  *E.g.*, *Matter of Fischel*, 557 F.2d 209, 211-12 (9th Cir. 1977).

11       Defendants responded to these points in meet and confers by insisting that

12  any discussions about the design of the Terms of Use—as opposed to the content—

13  are categorically privileged because in-house lawyers are responsible for the Terms

14  of Use.  This ignores that "in-house counsel may operate in a purely or primarily

15  business capacity."  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065,

16  1076 (N.D. Cal. 2002).  Indeed, because in-house lawyers often provide business

17  advice, Defendants must make a "clear showing" that any in-house feedback on the

18  Terms of Use "was given in a legal capacity."  *Cusack-Acocella*, 2019 WL 2621921,

19  at *2.  Having offered nothing more than their say-so, Defendants cannot meet this

20  standard.  *See Alliance Atlantis Releasing Ltd. v. Bob Yari Productions*, 2009 WL

21  10672591, at *4 (C.D. Cal. May 14, 2009) ("vague and overbroad assertion" that

22  lawyer served as "general counsel" insufficient to establish privilege).  If anything,

23  the fact that the lawyers involved in Terms of Use are in-house, rather than outside

24  counsel, makes it "more likely" that any communications regarding the Terms of

25  Use were "made for a business purpose," because it shows these are just routine

26

27  _____

28       [2]  *See* Ticketmaster Design Components:  Overview,
    https://design.ticketmaster.com/components/overview/ (last accessed Oct. 5, 2020).

website design choices untethered to legal advice. *Engurasoff v. Zayo Grp. LLC*, 2015 WL 335793, at *3 (N.D. Cal. Jan. 23, 2015).

Moreover, even assuming some documents concerning the Terms of Use might be privileged (which Plaintiffs dispute), not *all* of them are. For example, comments on the Terms of Use by non-lawyers that do "not relate to transmission of legal advice" are not privileged. *E.g.*, *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *6 (N.D. Cal. Mar. 11, 2011) (in antitrust case, communications among non-lawyers were not privileged). Similarly, documents reflecting discussions by programmers or similar employees charged with implementing design decisions related to the Terms of Use are not protected from disclosure. It is highly likely that such documents exist, and Defendants are in no position to argue otherwise, having chosen not to look for responsive documents at all.

2.    Defendants' Work-Product Objection Fails

Defendants also assert an ill-defined "work product" objection. "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citation omitted).

Defendants plainly fail to meet this standard. Their websites and the Terms of Use clearly were not prepared "in anticipation of litigation"; according to Defendants, they were created so that "users can purchase tickets to events." ECF No. 26 (Tobias Decl.) ¶ 3. Even if Defendants' design choices have *some* relation to potential litigation, it is not the case that they would "have been prepared or obtained *because of* the prospect of litigation." *Richey*, 632 F.3d at 568 (citation omitted; emphasis added); *see also Griffith v. Davis*, 161 F.R.D. 687, 699 (C.D. Cal. 1995) (overruling work product objection) (citation omitted). Defendants' design choices, and the resulting UX interfaces, are nothing more than "materials assembled in the ordinary course of business," which are not protected. *See SPS*

*Techs., LLC v. Briles Aerospace, Inc.*, 2020 WL 3050777, at \*4 (C.D. Cal. Feb. 18, 2020) (affidavit from counsel not protected as work product) (citation omitted).

### B. Defendants Waived Privilege

To the extent privilege attached to any specific communications regarding Terms of Use-related design choices, Defendants waived it by making the design of the Terms of Use the centerpiece of their arbitration motion.

"The privilege . . . may not be used both as a sword and a shield.  Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).  Courts examine three factors to determine waiver:  (i) whether the party is asserting the privilege as the result of an "affirmative act"; (ii) whether the asserting party put the privileged information at issue through that affirmative act; and (iii) whether "allowing the privilege would deny the opposing party access to information vital to its defense."  *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).  All three factors are satisfied here.

The first two factors are satisfied because Defendants voluntarily put the design of the Terms of Use at issue in their arbitration motion.  Defendants' motion rests on the assertion that Defendants' websites "informed users of the Terms," and thereby provided constructive notice of the Terms of Use.  ECF No. 25 (Motion to Compel Arbitration) at 5.  The primary factual support for this assertion is a declaration from Ms. Tobias, LNE's in-house counsel, which describes the design of the Terms of Use and how users perceive the Terms of Use.

Specifically, the declaration states:  "in order to purchase a ticket on the Ticketmaster or Live Nation desktop or mobile websites, ***a user is required to affirmatively accept Terms of Use*** that include a mandatory arbitration clause.  It is ***literally impossible*** to buy a ticket from the Ticketmaster or Live Nation desktop or mobile websites without agreeing to the Terms of Use."  Tobias Decl. ¶ 4 (emphasis added).  This broad assertion covers all of the subjects of Plaintiffs' discovery

requests.  The declaration repeatedly mentions the "look and feel" of Defendants' websites.  *Id.* ¶¶ 6, 9, 11, 13, 15, 18, 20, 22, 24, 27, 29, 31, 33, 36, 38, 40.  The declaration also walks through all of Defendants' UX interfaces and explains how, in the view of LNE's in-house counsel, Defendants' design choices "require[] users to agree to the Terms of Use."  *E.g.*, *id.* ¶ 6.  Defendants thus put the design of the Terms of Use, as well as their in-house counsel's opinions about that design, directly at issue.  Such opinions presumably are based on any advice that Ms. Tobias and her in-house counsel gave regarding the Terms of Use and the design surrounding them.

The third factor—whether Defendants' privilege objection would deprive Plaintiffs of vital materials—is satisfied as well.  Consistent with the Court's prior Orders, documentation regarding Defendants' design process is necessary to test Defendants' self-serving assertions that users notice the Terms of Use.  *See Walters Wholesale Elec. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 247 F.R.D. 593, 596 (C.D. Cal. 2008) (finding waiver where disclosure was necessary "to examine and test the bases for [party's] assertion").

In particular, documents regarding whether Defendants intentionally designed their Terms of Use to be inconspicuous are critical to cross-examining Ms. Tobias and providing full context for the curated screenshots included with Defendants' motion.  *See Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6168035, at *10 (C.D. Cal. June 12, 2018) (finding waiver where allegedly privileged information was necessary to assess "Defendants' primary argument"); *Chevron Corp. v. Donziger*, 2013 WL 6182744, at *3 (S.D.N.Y. Nov. 21, 2013) (finding waiver where privilege assertion "if permitted, would deprive [plaintiff] access to information necessary to assess the validity of [defendants'] claim").  It would be manifestly unfair for Defendants to use the selective disclosure of in-house counsel's testimony to bolster their arbitration motion, only to effectively shut down questioning of their witness and prevent impeachment by claiming privilege over all

of the internal documentation supporting that testimony. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials").

### C. Defendants' Refusal to Provide a Privilege Log Negates Their Ability to Assert Privilege

Finally, Defendants have failed to establish privilege because they refuse to provide a privilege log, which is necessary to invoke privilege protections. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1126, 1133 n.1 (9th Cir. 2009) ("some form of a privilege log is required"); *Johnson v. Runnels*, 2009 WL 900755, at *8 (E.D. Cal. Mar. 31, 2009) ("Again, blanket assertions of privilege without a privilege log are *not* an appropriate response to a discovery request.") (emphasis in original).[3]

The lack of a privilege log is compounded by Defendants' other discovery failures. As noted, Defendants have not even bothered to search for responsive documents. They have also refused to provide Plaintiffs with a list of the individuals with responsibility for the Terms of Use, or basic documentation of the design process or how decisions about the Terms of Use are implemented in practice. *See* Ex. A. This leaves Defendants' privilege assertion nebulous and untestable, and has prevented Plaintiffs (and the Court) from evaluating privilege as

---

[3] This principle is so well established that it is hard to see why Defendants even dispute it. *See Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, 2012 WL 12888106, at *5 (C.D. Cal. Dec. 10, 2012) (granting motion to compel privilege log as necessary "to test any such assertion of the privilege"); *see also Sherman v. CLP Resources, Inc.*, 2014 WL 12850524, at *5 (C.D. Cal. Sept. 10, 2014) ("a detailed privilege log must be provided"); *Unihan Corp. v. Max Grp. Corp.*, 2010 WL 11549384, at *7 (C.D. Cal. Oct. 12, 2010) ("a party claiming privilege must produce a privilege log identifying those documents withheld on the grounds of privilege"); *NetCurrents Info. Servs. Inc. v. Dow Jones & Co.*, 2008 WL 11338879, at *4 (C.D. Cal. June 11, 2008) (even where "**some** documents . . . may be protected by the attorney-client privilege or the work product doctrine," "the party claiming such privilege must produce a privilege log") (emphasis in original).

1  to any specific materials that are being withheld—the process that is typically

2  employed to resolve privilege disputes.  Defendants' privilege claim fails for this

3  reason alone.  *See Bess v. Cate*, 2008 WL 5100203, at *5 (E.D. Cal. Nov. 26, 2008)

4  ("Because defendants failed to provide a privilege log, lodged blanket and dilatory

5  objections, and unreasonably delayed discovery, this court finds they have waived

6  any such privilege."); *Am. Dental Ass'n v. Khorrami*, 2003 WL 24141019, at *8

7  (C.D. Cal. July 14, 2003) (finding privilege waiver in part due to "Defendant's

8  intentional refusal to produce a privilege log").

9       Defendants suggest that preparing a privilege log would be too burdensome,

10  because the Terms of Use are allegedly the responsibility of in-house counsel.  But

11  materials from in-house lawyers are often produced and logged in civil litigation.  In

12  any event, it is *Defendants'* burden to establish the privilege; they cannot shirk that

13  obligation by complaining that it is somehow too hard for them to meet it.  *See*

14  *Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch Pierce*

15  *Fenner & Smith*, 265 F.R.D. 589, 593 (N.D. Fla. 2010) ("the fact that the

16  compilation of such a log is burdensome will not obviate the obligation of providing

17  one") (citing *Burlington N.*, 408 F.3d at 1149 n.3).

## CONCLUSION

19       For the foregoing reasons, Plaintiffs respectfully request that, pursuant to

20  Rule 37(a)(1), the Court order Defendants to produce documents responsive to RFPs

21  4-9, and provide full answers to Plaintiffs' interrogatories, within 30 days of a ruling

22  on this motion.

1    DATED: October 6, 2020                QUINN EMANUEL URQUHART &
2                                           SULLIVAN, LLP

3
4                                           By   /s/ Frederick A. Lorig
5                                               Frederick A. Lorig
                                                Kevin Y. Teruya
6                                               Adam B. Wolfson
                                                William R. Sears
7
8                                               Attorneys for Plaintiffs Olivia Van
                                                Iderstine and Mitch Oberstein
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28