LATHAM & WATKINS LLP
  Daniel M. Wall (Bar No. 102580)
   *dan.wall@lw.com*
  Timothy L. O'Mara (Bar No. 212731)
   *tim.o'mara@lw.com*
  Andrew M. Gass (Bar No. 259694)
   *andrew.gass@lw.com*
  Christopher B. Campbell (Bar No. 254776)
   *christopher.campbell@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Olivia Van Iderstine and Mitch Oberstein, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | Case No. 2:20-cv-03888-GW-GJS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION TO COMPEL ARBITRATION-RELATED DISCOVERY**<br><br>The Honorable George H. Wu<br>Hearing Date: November 2, 2020<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D, 9th Floor |

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................1

II. BACKGROUND ...................................................................................................2

III. ARGUMENT .........................................................................................................4

    A. The Subjective Intent Discovery Plaintiffs Seek Is Irrelevant.........................................................................................................4

    B. The Requested Discovery Is Improper Because It Does Not Raise a Genuine Dispute as to Contract Formation....................7

    C. Most of the Information Plaintiffs Seek Is Privileged ......................9

        1. Defendants Have Not Waived Privilege .............................10

        2. The Federal Rules Expressly Endorse the Scope and Manner of Defendants' Privilege Objections .................11

    D. Producing the Irrelevant and Privileged Discovery That Plaintiffs Seek Would Be Unduly Burdensome............................12

IV. CONCLUSION...................................................................................................13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

# TABLE OF AUTHORITIES

**CASES**

*Accardo v. Equifax, Inc.*,
    No. CV 18-5030, 2019 WL 5695947 (E.D.N.Y. Aug. 9, 2019)........................7

*Allen v. Shutterfly, Inc.*,
    No. 20-CV-02448, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020)............... 7, 8

*Arena v. Intuit Inc.*,
    444 F. Supp. 3d 1086 (N.D. Cal. 2020) ................................................. 2, 6

*Colgate v. JUUL Labs, Inc.*,
    402 F. Supp. 3d 728 (N.D. Cal. 2019) ..........................................................5

*Cullinane v. Uber Techs., Inc.*,
    893 F.3d 53 (1st Cir. 2018).............................................................................5

*Dohrmann v. Intuit, Inc.*,
    No. 20-15466, 2020 WL 4601254 (9th Cir. Aug. 11, 2020)....................... 6, 7

*Finjan, Inc. v. Sonicwall, Inc.*,
    No. 17-CV-04467, 2018 WL 4998149 (N.D. Cal. Oct. 15, 2018)................. 11

*Hudson v. Babilonia*,
    2015 WL 1780879 (D. Conn. April 20, 2015) ...............................................8

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ...............................................................4

*Loewen v. Lyft, Inc.*,
    No. 15-CV-01159, 2015 WL 12780465 (N.D. Cal. 2015).............................6

*McKee v. Audible*,
    No. 17-CV-1941, 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017).....................8

*Meyer v. T-Mobile USA Inc.*,
    836 F. Supp. 2d 994 (N.D. Cal. 2011) ..........................................................7

*MGA Entm't, Inc. v. Nat'l Prod. Ltd.*,
    No. CV 10-07083, 2012 WL 3150532 (C.D. Cal. Aug. 2, 2012)..................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) .................................................................................... 2, 8

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ........................................................... 2, 5, 6

*Oceana, Inc. v. Ross*,
   920 F.3d 855 (D.C. Cir. 2019) ................................................................ 12

*S. Cal. Pizza Co., LLC v. First Mercury Ins. Co.*,
   No. 10-CV-05165, 2011 WL 13217212 (C.D. Cal. Apr. 29, 2011) ............ 7

*Tennenbaum v. Deloitte & Touche*,
   77 F.3d 337 (9th Cir. 1996) ............................................................... 10, 11

*United States v. Al-Shawaf*,
   No. CV 16-1539, 2017 WL 5997440 (C.D. Cal. Sept. 5, 2017) .............. 10

*United States v. Graf*,
   610 F.3d 1148 (9th Cir. 2010) ................................................................ 10

*Unsworth v. Musk*,
   No. 19-MC-80224, 2019 WL 5550060 (N.D. Cal. Oct. 28, 2019) .......... 12

*Wilson v. Huuuge, Inc.*,
   944 F.3d 1212 (9th Cir. 2019) .................................................................. 5

**RULES**

Fed. R. Civ. P. 26 .............................................................................................. 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

## I. INTRODUCTION

Plaintiffs' motion is rooted in their claim that Defendants "refuse to engage in the discovery process the Court authorized." Pls.' Mot. at 1, ECF No. 51-1 ("Mot."). That blatantly mischaracterizes the record. The only discovery "authorized" by the Court was click data—which the Court later countermanded when it granted Defendants' motion for reconsideration. As to everything else, including every discovery request at issue in this motion, the Court said only that Plaintiffs can "ask for [arbitration-related discovery]. If [Defendants] say yes, [Plaintiffs] can get it. If they say no, [Plaintiffs] can make a motion to compel." Hr'g Tr. 7:25-8:2, ECF No. 52-2. This is precisely what unfolded here. Plaintiffs asked. Defendants objected. Plaintiffs moved.

Now, for the first time, the Court has before it the precise contours of the discovery that Plaintiffs seek: documents and information regarding Defendants' *subjective intent*. The law is clear that Plaintiffs are not entitled to this wholly irrelevant information. The only questions at issue in Defendants' motion to compel arbitration are whether Defendants' websites provided constructive notice to users of Defendants' Terms of Use ("Terms"), including the arbitration provision therein, and whether Plaintiffs consented to those Terms. Plaintiffs and the Court *already have* all of the information needed to answer those questions, including the categories of information Plaintiffs now raise, such as how (and where) the hyperlinks to the Terms appeared, and where in the Terms the arbitration clause appeared. Mot. at 3-5. Defendants filed that information with their motion to compel arbitration, including comprehensive screenshots of every relevant webpage that each Plaintiff saw at the time he or she interacted with Defendants' websites. Those screenshots show *exactly* what the various notices looked like when Plaintiffs used the websites, how Plaintiffs were required to assent to the Terms, and what was contained in the Terms that they accepted. *See* ECF Nos. 26 – 26-51.

Plaintiffs have never disputed *any* of that evidence. Instead, Plaintiffs have

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

spent the past 3+ months on a fishing expedition for irrelevant—and, in any event, privileged—discovery about what Defendants were thinking at the time they decided to design the webpages as they did, and about possible alternatives to the Terms and legal notices that Defendants may have considered but did not implement. None of that is relevant to a motion to compel arbitration based on constructive notice, which turns only on whether a reasonable person would have been on notice of the Terms given the actual presentation of the webpages. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). Indeed, in all of their briefing on the arbitration issue—their first discovery motion, their opposition to Defendants' motion for reconsideration, and the instant motion—Plaintiffs have never cited a single case holding that *subjective intent* is somehow relevant to answering the objective question of constructive notice. They cannot, because it is irrelevant.

The Federal Arbitration Act ("FAA") permits only a "restricted inquiry into factual issues," and demands that arbitrable disputes be moved "out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). What Plaintiffs are requesting here goes far beyond the permissible "restricted inquiry," and serves only to needlessly delay resolution of the arbitration issue. Their motion should be denied.

## II. BACKGROUND

To date, the Court has only ruled on the substance of a single type of discovery: data about the number of times users click on hyperlinks to Defendants' Terms. The Court has addressed this "click data" twice. The Court first granted Plaintiffs' request for such data based on *Arena v. Intuit Inc.,* 444 F. Supp. 3d 1086 (N.D. Cal. 2020). Order, ECF No. 35. Then, after *Arena* was reversed by the Ninth Circuit, the Court granted Defendants' motion for reconsideration and countermanded its prior order. Order, ECF No. 46. On neither occasion did the Court consider or rule on the discovery requests at issue in the instant motion.

Rather, at the August 3 hearing on Plaintiffs' initial discovery motion, the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

Court ordered Defendants to produce click data, and allowed Plaintiffs to "ask for other discovery" relating to the issues in Defendants' motion to compel arbitration. Hr'g Tr. 5:13-25, ECF No. 52-2.  The Court made it clear that Defendants would have an opportunity to object to those other discovery requests, and that Plaintiffs could file a motion to compel if there were any disputes.  *Id.* 5:24-6:2, 7:19-8:8. Later, at the September 17 hearing on Defendants' motion for reconsideration, Defendants' counsel reiterated that, while the Court had previously allowed Plaintiffs to *ask for* discovery beyond click data, the Court had not considered any requests for such discovery—or ordered that any such discovery be produced.  *See* Hr'g Tr. 10:23-11:10, ECF No. 52-3.  Rather, the Court "allowed the plaintiffs to ask for anything else and allowed the discovery process to move forward with response from defendants. … And if the parties meet and confer and can't resolve it, then there would be a further motion to compel so there would be something specific in front of the Court." *Id.*

This is exactly the process that unfolded here.  On August 4, Plaintiffs served document requests, interrogatories, and deposition notices on Defendants.[1]  ECF Nos. 52-4, 52-5.  In addition to click data, Plaintiffs sought:

- How users "perceive" the Terms, and whether users "notice," "understand," or "read," the Terms.  Pls.' Requests for Production No. 4, ECF No. 52-4 ("RFP"); Pls.' Interrogs. No. 1, ECF No. 52-5 ("Rog.").

- "[A]ny discussion concerning the possibility or desirability of underlining the hyperlinks to the Terms." RFP No. 5; Rog. No. 1(a).

- Defendants' alleged "decision not to require users to check a box indicating their agreement, understanding, or assent to the Terms," and regarding Defendants' alleged "decision[s]" relating to "check boxes" on webpages that are not at issue in this lawsuit.  RFP Nos. 6, 8; Rog. Nos. 1(b), 3, 4.

- Defendants' alleged "decision to display a countdown timer on certain screens shown to users that contain a hyperlink to the Terms." RFP No. 7; Rog. No. 1(d).

---

[1]  As Plaintiffs acknowledge, Defendants have agreed to provide a limited deposition of Kimberly Tobias.  Mot. at 3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

- The "reasons for" an alleged "June 2019 change in the Terms" whereby a notice regarding arbitration was "added to the first page." RFP No. 9; Rog. No. 2.

To be clear, Plaintiffs do not seek to discover *whether*, for example, the websites use underlined hyperlinks or check boxes—they already have such discovery and know the answers to those questions. Rather, they seek discovery about Defendants' internal deliberations and subjective *decisions* about those issues. Defendants served timely objections to Plaintiffs' discovery requests on September 3. *See* ECF Nos. 52-6, 52-7. The parties met and conferred regarding Defendants' objections, and then Plaintiffs filed the instant motion.

Plaintiffs are therefore wrong that the Court has "twice recognized the relevance of the materials" at issue in this motion. Mot. at 1. Until this motion, the Court did not have before it any specific interrogatories or document requests, making it impossible for Defendants (or this Court) to evaluate the "relevance" or discoverability of the materials Plaintiffs now seek. To be sure, the Court authorized Plaintiffs to *serve* discovery as a general matter, but this is the first time the Court has ever seen or been asked to weigh in on Plaintiffs' actual requests.[2]

## III. ARGUMENT

### A. *The Subjective Intent Discovery Plaintiffs Seek Is Irrelevant*

The issue before the Court is the proper scope of discovery into whether an arbitration agreement exists between the parties. It is black letter law that contract formation turns on objective facts—namely, "whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020). In

---

[2] Plaintiffs also take issue with the fact that Defendants "did not mention" their privilege objections "in their opposition to Plaintiff's initial discovery motion" or "at either of the prior hearings." Mot. at 3. The subject of that prior motion and those hearings was Plaintiffs' request for click data—*to which Defendants did not assert a privilege objection*. Plaintiffs did not serve the discovery requests that are the subject of this motion until *after* the briefing and hearing on the initial discovery motion had concluded. Obviously, it would have been impossible for Defendants to lodge privilege objections to requests that did not exist.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

the world of internet contracting, where an offer is communicated through a website inviting the offeree to accept by (for example) clicking a button or completing a transaction, the question is whether "the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F.3d at 1177. Consequently, the information that is material to (and, indeed, dispositive of) whether Plaintiffs agreed to arbitrate their claims is the *actual* content of the websites that Plaintiffs used: the interfaces they used, the notices they were given, and the Terms that governed their purchases and use of the site.

Defendants have already provided *all* of that information. *See* ECF Nos. 26-27. And though they have had that evidence for four months, Plaintiffs have not disputed any of it, claimed that it is incomplete, or otherwise requested discovery about the actual content of the sites, interfaces, and Terms that Plaintiffs saw and interacted with. Instead, Plaintiffs seek wide-ranging discovery into Defendants' purported internal deliberations and "discussions" about possible alternative website layouts and designs that were never used, the subjective "reasons" for the design and content of those websites, and Defendants' internal deliberations about the content of the Terms themselves. *See* ECF Nos. 52-4, 52-5. This discovery has nothing to do with the question before the Court: whether the websites that Plaintiffs *actually encountered*—and that form the basis of Defendants' motion to compel arbitration—establish constructive notice, as a matter of law. *See Nguyen*, 763 F.3d at 1177.[3]

Indeed, Plaintiffs have not cited a single case holding that the evidence they seek is relevant. Instead, Plaintiffs cite *Nguyen* and other cases for the general proposition that constructive notice turns on a website's "design." Mot. at 3-4. But

---

[3] *See also Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019) ("Users are put on constructive notice based on the conspicuousness and placement of the terms and conditions, as well as the content and overall design of the app."); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764 (N.D. Cal. 2019) ("[T]he question is whether the plaintiffs were on inquiry notice of the arbitration provision by virtue of the hyperlink to the Terms of Service on the sign-up page and manifested their assent to the agreement by clicking 'sign up.'"); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018) ("[I]n the context of web-based contracts … clarity and conspicuousness are a function of the design and content of the relevant interface.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

those cases make clear that "design" in this context means the "placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design." *Nguyen*, 763 F.3d at 1177. None of these cases support (or even consider) Plaintiffs' claim that the website owner's *subjective* reasons for using one form of notice or one layout rather than another—e.g., *why* color contrasting text vs. underlined text—is somehow relevant to constructive notice.

Moreover, courts that have actually considered requests for such discovery have rejected them on grounds that the information sought is irrelevant to deciding whether a binding arbitration agreement exists. For instance, in *Loewen v. Lyft, Inc.*, Lyft moved to compel arbitration. No. 15-CV-01159, 2015 WL 12780465, at *1-2 (N.D. Cal. 2015). Before responding to that motion, the plaintiffs claimed to require discovery of "documents reflecting *reasons why* changes were made to all versions of Lyft's terms of service." *Id.* at *3 (emphasis added). The court held that the plaintiffs were "not entitled to any of this discovery" because "the extremely broad discovery sought is not even directed to the question of whether [there was] proper notice of the [terms]." *Id.* The same is true here.

The Ninth Circuit's recent decision in *Dohrmann*—which led this Court to grant Defendants' motion for reconsideration regarding click data—is also instructive. *Dohrmann v. Intuit, Inc.*, No. 20-15466, 2020 WL 4601254 (9th Cir. Aug. 11, 2020); Order, ECF No. 46. There, in addition to click data, the district court relied on a declaration from a cognitive science expert. *See Arena*, 444 F. Supp. 3d at 1092. The expert had reviewed the notices of the terms on TurboTax's website, contrasted them to other possible design choices, and opined that TurboTax's notices "were designed to be inconspicuous and were presented in a manner that made them difficult for users to notice, read and understand." Decl. of H. Brignull in Opp'n to Def. Intuit's Mot. to Compel Arb. at 16, *In re Intuit Free File Litig.*, No. 19-cv-02546 (N.D. Cal.), ECF No. 111-5. The Ninth Circuit reversed and ordered arbitration, holding that "the opinion of Plaintiffs' cognitive science

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

expert does not affect" whether the website "provided sufficient notice to a reasonably prudent internet user of its Terms of Use." *Dohrmann*, 2020 WL 4601254, at *2 n.3. Likewise, in this case, the possible existence of other, alternate forms of notice (e.g., a check box or underlined hyperlinks) that were *not* used is irrelevant to whether the notices *actually given* were sufficient as a matter of law.

Plaintiffs do not even try to address this issue directly, nor do they state explicitly that intent or deliberations about other alternative designs matters to constructive notice. That is because constructive notice turns only on the parties' outward manifestations: how Defendants' websites actually appeared to Plaintiffs when they created accounts, logged in, and purchased tickets. The Court and Plaintiffs already have that evidence. Plaintiffs' motion should therefore be denied.

### B. The Requested Discovery Is Improper Because It Does Not Raise a Genuine Dispute as to Contract Formation

Pre-arbitration discovery is improper unless it raises a genuine dispute as to contract formation. *See Allen v. Shutterfly, Inc.*, No. 20-CV-02448, 2020 WL 5517172, at *7 (N.D. Cal. Sept. 14, 2020). To that end, where (as here) there is uncontroverted evidence of an agreement to arbitrate, courts routinely deny pre-arbitration discovery requests unless the moving party identifies how the requested discovery would raise "a triable issue … regarding the making of the [arbitration] Agreement." *S. Cal. Pizza Co., LLC v. First Mercury Ins. Co.*, No. 10-CV-05165, 2011 WL 13217212, at *5 (C.D. Cal. Apr. 29, 2011); *see also Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1007 (N.D. Cal. 2011) (denying discovery "[b]ecause Plaintiff's proposed discovery requests are either overly broad or irrelevant to the disposition of the pending Motion"). In those rare cases where courts permit pre-arbitration discovery, it is because the fundamental facts bearing on constructive notice were in dispute. *See, e.g.*, *Accardo v. Equifax, Inc.*, No. CV 18-5030, 2019 WL 5695947, at *6-7 (E.D.N.Y. Aug. 9, 2019) (plaintiff submitted evidence that she had been the victim of identity theft, and therefore did not view defendant's webpage

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

at all); *Hudson v. Babilonia*, No 3:14–cv–01646, 2015 WL 1780879, at *2-3 (D. Conn. April 20, 2015) (same). That is indisputably not the case here. The fundamental facts bearing on constructive notice are <u>not</u> in dispute: Plaintiffs have not disputed the contents of the websites, notices, or Terms when they used those websites to create accounts, sign into those accounts, and then purchase tickets.

This Court's decision in *McKee v. Audible* is illustrative. *See* No. 17-CV-1941, 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017). In that case, Audible moved to compel arbitration and submitted uncontroverted evidence regarding plaintiffs' use of Audible's website and the notices contained therein. *Id.* at *1-3. In response, plaintiffs sought pre-arbitration "discovery on the issue of mutual assent," *id.* at *3 n.2, but "present[ed] no evidence that undermines the veracity of [the testimony in Audible's declaration], or the authenticity of the flows," *id.* at *4. This Court explained that it would permit pre-arbitration discovery only "if Plaintiffs establish a *genuine dispute* as to the contents of the Audible website when Beals signed up for Audible and redeemed Membership Credits." *Id.* (emphasis added); *see also Allen*, 2020 WL 5517172, at *7 (rejecting discovery into click data because "the [Terms] and the undisputed appearance of Lifetouch's website speak for themselves and under clear authority in this Circuit, Plaintiff had sufficient constructive notice").

Here, the screenshots and other evidence that Defendants have submitted (i.e., showing the contents of Defendants' websites and operative Terms, as well as Plaintiffs' use of Defendants' websites) "speak for themselves." *See Allen*, 2020 WL 5517172, at *7. And, as in *McKee*, Plaintiffs have not raised any dispute (let alone a genuine dispute) as to that evidence. They do not argue, for example, that the screenshots are somehow inaccurate. Discovery is therefore improper and unnecessary, and would undermine the FAA's goal of "a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 29. Plaintiffs' requests for discovery should be denied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

### C. *Most of the Information Plaintiffs Seek Is Privileged*

Not only are Plaintiffs' sweeping discovery requests irrelevant—which alone is enough to deny their motion—but almost all of the information they demand is privileged. Specifically, the bulk of Plaintiffs' discovery requests seek information regarding Defendants' reasons for making certain changes to the actual Terms, and the rationale for the particular form of legal notices on Defendants' websites.[4] *See* ECF Nos. 52-4, 52-5. For example, Plaintiffs seek to discover *why* the Terms contain particular language on the first page (RFP No. 9; Rog. No. 2), and *why* the legal notices of the Terms do not include underlined hyperlinks or a "check box" (RFP Nos. 5-6, 8; Rog. Nos. 1(a), 1(b), 3, 4).

As Defendants repeatedly explained during meet-and-confers, both the Terms and the legal notices on Defendants' websites about those Terms are handled solely by Defendants' counsel. *See, e.g.*, ECF No. 52-1 at 2, 6. Any and all decisions regarding the Terms and notices of the Terms on Defendants' sites—and any analyses of and advice regarding those Terms and notices—are exclusively handled by counsel. K. Tobias Decl. in Supp. of Opp'n to Pls.' Mot. ¶¶ 7-10 ("Tobias Decl."). Non-lawyers are not involved in making those decisions. *Id.* This is because the Terms are a legal contract between users and Defendants, and because the notices of those Terms are the means by which users, as a matter of contract law, agree to be bound (and are bound) by those Terms. Lawyers are thus the only individuals responsible for these issues, and their internal analysis and decision-making on these issues reflects, for example, legal analysis and advice regarding the Terms' scope, the necessity of particular provisions, and how to effect legally binding assent to the Terms. These are inherently legal decisions, not business ones.

---

[4] RFP No. 7 and Interrogatory No. 1(d) are the only exceptions. Those requests relate to the generic "timer" on Defendants' websites, which Defendants use to track the temporary, courtesy hold they place on each user's selected *tickets* during the purchasing process, before the tickets are once again made available to all users. Tobias Decl. ¶ 11. The countdown timer has nothing to do with the Terms. It is a business decision regarding the checkout process, but for the reasons described above and below, these requests are nonetheless irrelevant and unduly burdensome.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

And it is beyond dispute that the attorney-client privilege "extends to communications between corporate employees and corporate counsel" as long as the communications are made to render or secure legal advice. *See United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010); *see also MGA Entm't, Inc. v. Nat'l Prod. Ltd.*, No. CV 10-07083, 2012 WL 3150532, at *2 (C.D. Cal. Aug. 2, 2012).

Nevertheless, Plaintiffs attempt to confuse the issue by arguing that these are "just routine website design choices untethered to legal advice." Mot. at 8-9. But the content of the Terms is not a "website design choice." It is a *legal contract* that is drafted, analyzed, and revised *by lawyers*. *See* Tobias Decl. ¶ 7. The content and form of the legal notices of those Terms likewise are not simply a "design choice" or "routine business decision." *See* Mot. at 8-9. To the contrary—unlike other aspects of Defendants' websites (such as the design of the homepage), which are handled by non-lawyers who make branding and programming decisions—an entirely separate team *of lawyers* has sole decision-making authority regarding the content and display of the legal notices of those Terms, which, again, are the means by which users assent to the Terms *as a legal matter*. Tobias Decl. ¶¶ 8-10.

### 1. *Defendants Have Not Waived Privilege*

Plaintiffs claim that, by submitting screenshots of what their publicly available websites actually look like—and by submitting a copy of their publicly available Terms—Defendants have somehow waived any claim of privilege with respect to its Terms and the notice of its Terms. *See* Mot. at 10-12. This argument is frivolous and should be rejected.

Waiver is an "exceedingly severe" sanction, *United States v. Al-Shawaf*, No. CV 16-1539, 2017 WL 5997440, at *4 (C.D. Cal. Sept. 5, 2017), "rooted in notions of fundamental fairness," *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996). Its "principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

privilege to avoid disclosing those that are less favorable." *Id.* Waiver is not meant to be used as a weapon by a party to "obtain an adversary's privileged communications simply because it believes those communications would bear on— or even contradict—its adversary's allegations." *Finjan, Inc. v. Sonicwall, Inc.*, No. 17-CV-04467, 2018 WL 4998149, at *4 (N.D. Cal. Oct. 15, 2018).

The only thing Ms. Tobias's declaration puts "at issue" are publicly available screenshots showing the *objective appearance* of Defendants' webpages, and publicly available copies of the Terms to which Plaintiffs' agreed. *See* ECF No. 26. Courts (including this one) routinely rely on exactly this type of information in ruling on motions to compel arbitration. *See, e.g.*, *Dickey v. Ticketmaster LLC*, No. 18-CV-9052, 2019 WL 9096443, at *6-10 (relying on the "Declaration of Kimberly Tobias" and the screenshots of the Ticketmaster website attached thereto in finding that plaintiff assented to Ticketmaster's Terms). Ms. Tobias's declaration does not reveal or put at issue any attorney-client privileged communications or decisions (indeed, it does not address or even mention the decision-making process, "design process," or anything of the sort, with respect to the Terms and notices); rather, it simply addresses what the relevant webpages looked like. *See* ECF No. 26. Whatever privileged deliberations took place *before* Defendants settled on the webpages' final design, or while Defendants were drafting or revising the Terms, are irrelevant to (and not at issue in) Defendants' motion.[5]

### 2. *The Federal Rules Expressly Endorse the Scope and Manner of Defendants' Privilege Objections*

Plaintiffs' motion is replete with baseless accusations that Defendants' privilege objections are improper. Mot. at 1, 6, 12-13. Plaintiffs assert that even though the parties contest whether any of the additional discovery Plaintiffs seek—

---

[5] Plaintiffs take issue with Ms. Tobias's statement that users are "required to affirmatively accept" the Terms, and that it is "literally impossible" to buy a ticket without agreeing to the Terms. *See* Mot. at 10-11. These are factual descriptions of the ticket-buying process, which includes as a necessary step that users agree to the Terms. They do not reference, reflect, or reveal any privileged communication.

privileged or not—is permissible, Defendants are still obligated to collect, review, and individually log their privileged documents, lest they waive the privilege entirely. Plaintiffs are wrong. Under Federal Rule of Civil Procedure 26(b)(5), a party is required to provide individualized document descriptions following an assertion of privilege only when the withheld documents are "otherwise discoverable." Fed. R. Civ. P. 26(b)(5); *see also Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (citing Rule 26(b)(5) and noting that because the documents at issue were "irrelevant and therefore not 'otherwise discoverable,' they [were] not required to be placed on a privilege log"). Indeed, the Advisory Committee Notes to Rule 26 explicitly contemplate the situation Defendants face now: if a party "believes in good faith" that the discovery request at issue is "unduly burdensome, it should make its objection to the breadth of the request." *See* Fed. R. Civ. P. 26, Advisory Comm. Notes to 1993 Amendment. Following its objection, the party need not produce responsive, non-privileged documents, or describe responsive, privileged documents. *See id.* If, however, the court ultimately rules that the documents sought are "properly discoverable," then at that point, the documents should be "either produced (if not privileged) or described (if claimed to be privileged)." *Id.* This is exactly what Defendants have done here. The privileged documents Plaintiffs seek are not "otherwise discoverable" because they are irrelevant and, therefore, are unduly burdensome to produce as a matter of law. Only if the Court disagrees will Defendants be obligated to undertake the time-consuming and costly process of reviewing and individually describing each of the privileged documents responsive to Plaintiffs' discovery requests.

### D. *Producing the Irrelevant and Privileged Discovery That Plaintiffs Seek Would Be Unduly Burdensome*

Because the discovery Plaintiffs seek is irrelevant, "any burden whatsoever" associated with producing it is "by definition 'undue.'" *Unsworth v. Musk*, No. 19-MC-80224, 2019 WL 5550060, at *6 (N.D. Cal. Oct. 28, 2019). Plaintiffs'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

discovery requests are also unduly burdensome as a matter of fact. In complex cases, the cost of collecting, processing, and reviewing documents can easily cost more than $140,000 per custodian just for third-party vendors, not including quality control work performed by outside counsel. Tobias Decl. ¶ 14. Here, Plaintiffs ask Defendants to produce a broad (and irrelevant) set of documents and information regarding any internal deliberations that led to the drafting and design of the notices and Terms—which overwhelmingly targets privileged information. *See supra* § III.C. Lawyers are the only possible custodians of these documents, and the likelihood that they have any non-privileged, responsive documents is so exceedingly low that the burden of collecting, reviewing, and logging them is not justified.

The burden associated with the only potentially non-privileged (but still irrelevant) discovery that Plaintiffs seek—relating to Defendants' "decision to display a countdown timer on certain screens" of their websites, *see* RFP No. 7; Rog. No. 1(d)—is also undue. Defendants' decision to display this "timer" on their sites was made *at least* fifteen years ago, possibly as far back as 1996. Tobias Decl. ¶ 12. Despite asking dozens of employees, and searching development logs and other records, Defendants have not been able to identify who was involved in this decision or when exactly it was made. *Id*. And even if Defendants were able to identify who made this decades-old decision, it is extremely unlikely that they are still employed with Defendants; likewise, there is virtually no chance that any documents regarding this decision still exist, if they ever existed in the first place. *Id.* ¶¶ 12-13. The burden of attempting to locate and produce this irrelevant information is undue.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety.

/ / /

/ / /

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS

Dated: October 13, 2020

Respectfully Submitted,

LATHAM & WATKINS LLP

By: /s/ Timothy L. O'Mara
Timothy L. O'Mara

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
tim.o'mara@lw.com

*Attorneys for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' OPP'N TO PLS.' RENEWED
MOT. TO COMPEL DISCOVERY
CASE NO. 2:20-CV-03888-GW-GJS