1  LATHAM & WATKINS LLP
       Daniel M. Wall (Bar No. 102580)
2          *dan.wall@lw.com*
       Timothy L. O'Mara (Bar No. 212731)
3          *tim.o'mara@lw.com*
       Andrew M. Gass (Bar No. 259694)
4          *andrew.gass@lw.com*
       Kirsten M. Ferguson (Bar No. 252781)
5          *kirsten.ferguson@lw.com*
   505 Montgomery Street, Suite 2000
6  San Francisco, California 94111-6538
   Telephone: +1.415.391.0600
7  Facsimile: +1.415.395.8095

8  *Attorneys for Defendants Live Nation*
   *Entertainment, Inc. and Ticketmaster L.L.C.*
9

10             **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  Mitch Oberstein, Gary Matty, and Sophie Burke, on behalf of themselves and all those similarly situated, | Case No. 2:20-cv-03888-GW-GJS |
| 14 | |
| 15                    Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO COMPEL ARBITRATION** |
| 16  v. | |
| 17  Live Nation Entertainment, Inc., and Ticketmaster LLC, | The Honorable George H. Wu |
| 18 | |
| 19                    Defendants. | Hearing Date: May 10, 2021 |
| 20 | Hearing Time: 8:30 a.m. |
| 21 | Courtroom: 9D, 9th Floor |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................. 1

II.    TICKETMASTER AND LIVE NATION CAN ENFORCE
       THE TERMS ........................................................................................ 2

       A.     The Terms Identify Ticketmaster and Live Nation as
              Parties ........................................................................................ 2

       B.     Live Nation Can Enforce the Terms—Whether or Not It
              Is Identified as a Party ............................................................. 6

III.   PLAINTIFFS ASSENTED TO THE TERMS ......................................... 7

       A.     Plaintiffs Do Not Dispute That Defendants' Screenshots
              Accurately Depict the Webpages Plaintiffs Saw ................. 8

       B.     Defendants' Webpages Provided Sufficient Notice of the
              Terms ........................................................................................ 11

       C.     Clickwrap Is Not Required for Constructive Notice ........ 13

       D.     The Court Should Not Consider the Analysis of
              Plaintiffs' Expert .................................................................... 14

       E.     The Terms Provided Sufficient Notice of the Arbitration
              Clause ....................................................................................... 15

IV.    PLAINTIFFS CANNOT USE THE CONDITIONAL
       LICENSE EXCEPTION TO AVOID ARBITRATION ........................... 16

       A.     The Applicability of the Exception Is a Question for the
              Arbitrator ................................................................................. 16

       B.     Plaintiffs' Claims Do Not Involve the Conditional
              License Granted to Them ....................................................... 18

V.     THE DELEGATION AND ARBITRATION CLAUSES ARE
       NOT UNCONSCIONABLE .................................................................. 19

       A.     *OTO v. Kho* Does Not Impact or Alter the Court's
              Holding in *Dickey* ................................................................... 19

       B.     The Delegation Clause Is Not Unconscionable ................. 20

              1.     Procedural Unconscionability ..................................... 20

              2.     Substantive Unconscionability ................................... 23

       C.     The Arbitration Clause Is Not Unconscionable ................. 24

VI.    CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkins v. Facebook, Inc.*,
No. C 18-05982, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ......................... 20

*Ajzenman v. Office of Comm'r of Baseball*,
No. CV 20-3643, 2020 WL 6031899 (C.D. Cal. Sept. 14,
2020) .......................................................................................... 9, 10, 11, 13, 17

*Allen v. Shutterfly, Inc.*,
No. 20-CV-02448, 2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ..................... 3

*Appelbaum v. AutoNation Inc.*,
No. SACV 13-01927, 2014 WL 1396585 (C.D. Cal. Apr. 8, 2014) .................... 3

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019) ........................................................................... 17

*Arena v. Intuit Inc.*,
444 F. Supp. 3d 1086 (N.D. Cal. 2020) ........................................................... 14

*Arista Films, Inc. v. Gilford Sec., Inc.*,
43 Cal. App. 4th 495 (1996) .............................................................................. 5

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ....................................................................................... 20

*Armor ALL/STP Prods. Co. v. TSI Prods.*,
337 F. Supp. 3d 156 (D. Conn. 2018) .............................................................. 17

*Bauer v. Atlantis Events, Inc.*,
2014 WL 12603112 (C.D. Cal. Mar. 5, 2014) .................................................. 20

*Benaroya v. Willis*,
23 Cal. App. 5th 462 (2018) .............................................................................. 5

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ..................................................................... 19, 24

*Broadcom Corp. v. Amazon.com Inc.*,
 No. SACV 16-01774, 2017 WL 5125743 (C.D. Cal. Mar. 22,
 2017) ................................................................................................................ 5

*Colgate v. JUUL Labs, Inc.*,
 402 F. Supp. 3d 728 (N.D. Cal. 2019) ............................................................ 12

*Cullinane v. Uber Techs., Inc.*,
 893 F.3d 53 (1st Cir. 2018) ............................................................................ 12

*Dickey v. Ticketmaster LLC*,
 No. CV 18-9052, 2019 WL 9096443 (C.D. Cal. Mar. 12,
 2019) .............................................................................. 11, 17, 18, 19, 22, 23

*Doherty v. Roseville Heritage Partners*,
 47 Cal. App. 5th 93 (2020) ............................................................................ 25

*Dohrmann v. Intuit, Inc.*,
 823 F. App'x 482 (9th Cir. 2020) .............................................................. 14, 15

*Ferguson v. Countrywide Credit Indus., Inc.*,
 298 F.3d 778 (9th Cir. 2002) .......................................................................... 23

*Flores v. Nature's Best Distrib., LLC*,
 7 Cal. App. 5th 1 (2016) ................................................................................... 5

*Flores v. Transamerica HomeFirst, Inc.*,
 93 Cal. App. 4th 846 (2001) ........................................................................... 24

*Fteja v. Facebook Inc.*,
 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .............................................................. 8

*Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cty.*,
 No. 12-CV-6125, 2014 WL 3672128 (W.D. Ark. July 23, 2014) .................... 11

*Grafton Partners v. Super. Ct.*,
 36 Cal. 4th 944 (2005) .................................................................................... 25

*Hansen v. Ticketmaster Entm't, Inc.*,
 No. 20-cv-02685, 2020 WL 7319358 (N.D. Cal. Dec. 11, 2020) ...... 9, 11, 13, 15

*Hart v. Charter Commc'ns, Inc.*,
 814 F. App'x 211 (9th Cir. 2020) ................................................................. 6, 7

*Himber v. Live Nation*,
   No. 16-CV-5001, 2018 WL 2304770 (E.D.N.Y. May 21, 2018) ..................... 17

*Jackson v. Grant*,
   890 F.2d 118 (9th Cir. 1989) ................................................................. 5

*Kauders v. Uber Techs., Inc.*,
   159 N.E.3d 1033 (Mass. 2021) ......................................................... 12, 13

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ............................................................... 5

*Lee v. Intelius Inc.*,
   737 F.3d 1254 (9th Cir. 2013) ............................................................... 4

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ............................... 7, 9, 10, 11, 13

*Lee v. Ticketmaster L.L.C.*,
   No. 18-CV-05987, 2019 WL 9096442 (N.D. Cal. Apr. 1, 2019) ............... 17, 18

*Loewen v. Lyft*,
   129 F. Supp. 3d 945 (N.D. Cal. 2015) .............................................. 16, 22

*Mahmoudiani v. Bartlett Care Ctr., LLC*,
   No. G055851, 2019 WL 1450424 (Cal. Ct. App. Apr. 2, 2019) ...................... 5

*Malone v. Super. Ct.*,
   226 Cal. App. 4th 1551 (2014) ........................................................... 23

*McKee v. Audible, Inc.*,
   No. CV 17-1941, 2017 WL 4685039 (C.D. Cal. July 17, 2017) ..................... 5

*McLeod v. Ford Motor Co.*,
   No. EDCV 04-1255, 2005 WL 3763354 (C.D. Cal. Apr. 14, 2005) ................. 7

*Mohamed v. Uber Techs., Inc.*,
   109 F. Supp. 3d 1185 (N.D. Cal. 2015) ............................................... 17

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ............................................................. 17

*Naria v. Trover Sols., Inc.*,
   967 F. Supp. 2d 1332 (N.D. Cal. 2013) ................................................. 7

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
   770 F.3d 1010 (2d Cir. 2014) ........................................................ 17

*Nevarez v. Forty Niners Football Co., LLC*,
   No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ................... 11

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................... 11, 15

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ..................................................... 12, 13

*OTO L.L.C. v. Kho*,
   8 Cal. 5th 111 (2020) ............................................................... 20

*Perez v. P & M Health Care Holdings, Inc.*,
   No. E069985, 2019 WL 1578360 (Cal. Ct. App. Apr. 12, 2019) ...................... 5

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) .............................................................. 22

*Pittard v. Orange Cty. Homecare*,
   No. 08-CV-1398, 2009 WL 10672900 (S.D. Cal. Apr. 15, 2009) ..................... 5

*Pokrass v. The DirecTV Grp., Inc.*,
   2008 WL 2897084 (C.D. Cal. July 14, 2008) ...................................... 20

*Swain v. LaserAway Med. Grp., Inc.*,
   57 Cal. App. 5th 59 (2020) ......................................................... 24

*Taylor v. Shutterfly, Inc.*,
   No. 18-CV-00266, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) .................. 17

*Tezak v. Live Nation*,
   No. 20-CV-2482, 2021 WL 916081 (N.D. Ill. Mar. 10, 2021) ...................... 17

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
   507 F. Supp. 2d 1096 (C.D. Cal. 2007) .......................................... 14

*Tompkins v. 23andMe, Inc.*,
   2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016
   (9th Cir. 2016) ................................................................ 21, 22

*Vargas v. Delivery Outsourcing, LLC*,
   2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ...................................... 17

*Westlye v. Look Sports, Inc.*,
 17 Cal. App. 4th 1715 (1993)..............................................................................5

*Wilson v. Huuuge, Inc.*,
 944 F.3d 1212 (9th Cir. 2019)..........................................................11, 12, 13

*Wright v. Sirius XM Radio Inc.*,
 No. SACV 16-01688, 2017 WL 4676580 (C.D. Cal. June 1, 2017) .................16

## STATUTES

Cal. Civ. Code
 § 1558 .............................................................................................................. 1, 3
 § 1641 ................................................................................................................... 3

# I.  INTRODUCTION

As this Court has recognized multiple times, "Plaintiffs face an uphill climb in their lawsuit: other courts—including the Ninth Circuit and this Court—have compelled arbitration of claims against either Ticketmaster or Live Nation based on *the very same websites* at issue here."  ECF No. 35 at 1; ECF No. 46 at 2.  Plaintiffs managed to delay this outcome for nearly a year by insisting on extensive, costly discovery into the "design process" behind Defendants' websites.[1]  But Plaintiffs uncovered nothing that helps them avoid arbitration here.  So, despite months of pre-arbitration discovery, Plaintiffs' primary argument against arbitration is a purely legal one that they could have briefed last year: that Defendants' Terms of Use ("Terms") are unenforceable because they do not use Defendants' formal corporate names in the first paragraph, or specifically define Defendants as "parties" to their own agreement with consumers.  This argument fails.  The law requires only that it be "possible to identify" the parties to an agreement, Cal. Civ. Code § 1558, and there is no question that the Terms clearly and repeatedly identify both Ticketmaster and Live Nation—including (for example) specifically naming "Live Nation Entertainment, Inc." in the arbitration clause and elsewhere.  Simply put, reasonable consumers would understand that they were dealing with Defendants when agreeing to the Terms.  Both Ticketmaster and Live Nation can enforce the Terms.

Plaintiffs' secondary argument—that they did not assent to the Terms—also fails.  Plaintiffs do not dispute that the screenshots Defendants submitted with their motion depict exactly what Plaintiffs saw when they signed in and purchased tickets on Defendants' websites.  Numerous courts have approved the notices on these *exact same webpages*, finding that they provide constructive notice of the Terms and the arbitration clause therein.  Nevertheless, Plaintiffs attempt to avoid arbitration by arguing that Defendants made "deliberate," nefarious decisions about the design of

---

[1] "Defendants" refers collectively to Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster L.L.C. ("Ticketmaster").

the notices—like altering the "opacity" of the text or not including a checkbox—and "could have" instead designed the notices differently.  These arguments are both irrelevant and completely unsupported by the evidence.  Regardless of whether Defendants "could have" designed their webpages differently, the actual webpages that Plaintiffs saw provide sufficient notice of the Terms.  The opinions of Plaintiffs' purported expert do not change that and, moreover, are irrelevant to the question of conspicuousness under Ninth Circuit law; they should be disregarded.

Plaintiffs' remaining arguments have already been rejected by this Court and others.  Plaintiffs assert that the "conditional license" exception in the arbitration clause applies here, but this Court and numerous others have determined that the arbitrator must decide threshold interpretation questions like this one because Defendants' delegation clause is "clear and unmistakable."  And, in any event, Plaintiffs' interpretation of the conditional license exception contradicts the plain language of the Terms.  Plaintiffs also are wrong that the delegation and arbitration clauses are unconscionable.  This Court, in *Dickey v. Ticketmaster*, found that the *exact same* delegation clause is <u>not</u> unconscionable.  It is just as valid as every other provision of the contract.  The Court, therefore, cannot reach challenges to the enforceability of the arbitration clause, since the parties delegated such questions to the arbitrator.  In any event, Plaintiffs' unconscionability arguments are meritless.

There is no sound basis for reaching a different result than the numerous courts that have compelled arbitration based on the same Terms, the same notices, and the same webpages at issue here.  The Court should grant Defendants' motion.

## II. TICKETMASTER AND LIVE NATION CAN ENFORCE THE TERMS

### A.   The Terms Identify Ticketmaster and Live Nation as Parties

Plaintiffs' core argument against arbitration boils down to the phrasing of the first paragraph of the Terms: there, it identifies Defendants by the common names that consumers use to refer to them—Live Nation and Ticketmaster—and does not include "Entertainment, Inc." after Live Nation, or "L.L.C." after Ticketmaster.

Plaintiffs claim that the absence of this formality renders the Terms unenforceable, and yet do not cite a _single_ case so holding.  No such case exists.  The reason is that California law requires only that it "be possible to identify" the parties to an agreement.  Cal. Civ. Code § 1558; _see also Appelbaum v. AutoNation Inc._, No. SACV 13-01927, 2014 WL 1396585, at *1, *7 (C.D. Cal. Apr. 8, 2014) (contracting party defined as "the entity Employee is employed by, together with its [affiliates]" was sufficiently identified); _Allen v. Shutterfly, Inc._, No. 20-CV-02448, 2020 WL 5517172, at *7 (N.D. Cal. Sept. 14, 2020) (Shutterfly could enforce Lifetouch's arbitration clause encompassing "any dispute, claim or controversy arising out of or relating in any way to the Lifetouch service," regardless of the entity sued).  The Terms—which identify Defendants in the first paragraph and more than fifteen times throughout—easily meet that standard as to both Ticketmaster _and_ Live Nation.[2]  _See_ Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, … each clause helping to interpret the other.").

Specifically, the first paragraph of the Terms states: "The following are the terms of use ('Terms') that govern your use of **Live Nation and Ticketmaster's** sites and mobile applications … and your purchase, possession, or use of any **Live Nation or Ticketmaster** tickets, products, or services."  Decl. of K. Tobias in Supp. of Defs.' Am. Mot. to Compel Arb. ("Tobias Decl.") Exs. 41-45, 53-55, ECF No. 85 (emphases added).[3]  The Terms go on to repeatedly reference both Defendants (Ticketmaster, nine times; Live Nation, seven), and to repeatedly identify ticketmaster.com and livenation.com URLs.  The Terms also appear on

---

[2]  Plaintiffs also argue that the Terms cannot apply to _all_ Ticketmaster and Live Nation affiliated companies because the Terms do not explicitly say so.  Pls.' Opp. to Defs.' Am. Mot. to Compel Arb. ("Opp.") at 9-10, ECF No. 92-1.  This is a red herring.  The question presented here is not whether some obscure affiliate or subsidiary can enforce the Terms, but whether _these Defendants_—Ticketmaster L.L.C., the primary Ticketmaster entity, and Live Nation Entertainment, Inc., the primary Live Nation entity—are adequately identified in the Terms.  They are.

[3]  All Plaintiffs agreed to a version of the Terms containing this language.  _See_ Defs.' Mem. in Supp. of Am. Mot. to Compel Arb. ("Mot.") at 19, ECF No. 84-1.

ticketmaster.com *and* livenation.com, where their logos are displayed prominently at the top and bottom of the page.  Tobias Decl. Ex. 45; *see* Reply Decl. of T. O'Mara ("O'Mara Reply Decl.") Exs. A, C (Ticketmaster and Live Nation Terms webpages). Further, at the bottom of the ticketmaster.com webpage where the Terms appear is a link to an explanation of "Who We Are," O'Mara Reply Decl. Ex. A, which explains that "Ticketmaster and Live Nation merged to create Live Nation Entertainment," and provides information on "Live Nation Entertainment," *id.* Ex. B.  Likewise, at the bottom of the livenation.com webpage where the Terms appear, under the heading "Company," the user is provided with links to information "About Live Nation Entertainment" and "About Ticketmaster."  *Id.* Ex. C.[4]

Moreover, "Live Nation Entertainment, Inc." (i.e., the formal corporate name of Defendant Live Nation, parent of Defendant Ticketmaster) *is* specifically named multiple times in the Terms—including in the arbitration clause.  *See, e.g.*, Tobias Decl. Ex. 45 at 195 ("To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to: Live Nation Entertainment, Inc."); *id.* at 193 ("Notices and counter-notices should be sent to General Counsel, Live Nation Entertainment, Inc.").  Indeed, the Terms clearly inform users that, "[if] you have any questions, comments or complaints regarding these Terms or the Site, *please contact us at Live Nation Entertainment, Inc.*"  *Id.* at 196 (emphasis added).

None of the cases Plaintiffs rely on are remotely similar.  Instead, Plaintiffs rely on cases where, unlike Defendants here, the party seeking to enforce the contract was not mentioned *anywhere* in the contract (neither by its common name nor its formal corporate name), and, for all practical purposes, was completely unrelated to the underlying agreement.  *See Lee v. Intelius Inc.*, 737 F.3d 1254, 1260-61 (9th Cir. 2013) (Adaptive could not compel arbitration because consumers would have

---

[4]   Also, the first paragraph of the Terms identifies (via hyperlink) Live Nation and Ticketmaster websites to which the Terms apply, O'Mara Reply Decl. Exs. A, B; if a user clicks those hyperlinks, he or she is directed to homepages providing the same information "About Live Nation Entertainment, "About Ticketmaster," and about "Who We Are," *id.* Exs. D, E.

thought the contracting party was Intelius: "Adaptive's name appeared nowhere on the … webpage.  In contrast, Intelius's name and logo were prominently displayed at the top of the page, and Intelius was mentioned several times by name in the text."); *Jackson v. Grant*, 890 F.2d 118, 121 (9th Cir. 1989) (no valid loan agreement between plaintiff and Union where contract "explicitly state[d] that Union [was] *not* the lender"); *McKee v. Audible, Inc.*, No. CV 17-1941, 2017 WL 4685039, at *11 (C.D. Cal. July 17, 2017) (rejecting Audible's attempt to enforce Amazon's conditions of use—which did not reference Audible by any name, and where Audible had its own, separate conditions of use—for purchases from Amazon).[5]

Plaintiffs' other cases fare no better.  In some, the alleged non-signatory to the agreement did not even argue that it was a contracting party.  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126-34 (9th Cir. 2013); *Broadcom Corp. v. Amazon.com Inc.*, No. SACV 16-01774, 2017 WL 5125743, at *4 (C.D. Cal. Mar. 22, 2017); *Benaroya v. Willis*, 23 Cal. App. 5th 462, 467-75 (2018); *Arista Films, Inc. v. Gilford Sec., Inc.*, 43 Cal. App. 4th 495, 502-03 (1996).  In others, the contract contained fundamental drafting errors, such as blank lines where the parties' names should have been.  *See Perez v. P & M Health Care Holdings, Inc.*, No. E069985, 2019 WL 1578360, at *4 (Cal. Ct. App. Apr. 12, 2019) (unpublished, noncitable case in which moving party "failed to identify itself" in the contract and did not "execute the signature block"); *Mahmoudiani v. Bartlett Care Ctr., LLC*, No. G055851, 2019 WL 1450424, at *2 (Cal. Ct. App. Apr. 2, 2019) (similar; also unpublished, noncitable); *Flores v. Nature's Best Distrib., LLC*, 7 Cal. App. 5th 1, 9 (2016) (similar).

Here, the Terms plainly and repeatedly identify Defendants (as does the surrounding content on the webpages where they appear), and clearly inform users

---

[5]  *See also Pittard v. Orange Cty. Homecare*, No. 08-CV-1398, 2009 WL 10672900, at *2 (S.D. Cal. Apr. 15, 2009) (defendant could not enforce arbitration agreement that explicitly identified a different legal entity as the contracting party); *Westlye v. Look Sports, Inc.*, 17 Cal. App. 4th 1715, 1727-28 (1993).

1   that they govern the relationship between users, on the one hand, and Defendants,

2   on the other.[6]  Indeed, many courts have considered the Terms in numerous other

3   disputes with consumers, and not once has a consumer argued—nor has a court ever

4   found—that the contracting parties are somehow unclear.  They are not.  Both

5   Ticketmaster and Live Nation are parties to the Terms and can enforce them.

6   **B.   Live Nation Can Enforce the Terms—Whether or Not It Is**

7   **Identified as a Party**

8   Given that each Plaintiff purchased tickets from Ticketmaster, through

9   Ticketmaster's websites, Plaintiffs' opposition focuses on the argument that Live

10  Nation is somehow not a party to the Terms.  *See* Opp. at 6-7.  This is plainly

11  incorrect, as explained above.  But even if Live Nation were not identified as a party

12  to the Terms, Live Nation could enforce the Terms as Ticketmaster's parent.  *See*

13  Mot. at 19.  The Ninth Circuit's opinion in *Hart v. Charter Commc'ns, Inc.*, 814 F.

14  App'x 211 (9th Cir. 2020), squarely holds as much.  In *Hart*, the court explained

15  that, "[u]nder California contract law, '[n]onsignatory defendants may enforce

16  arbitration agreements where there is sufficient identity of parties." *Id.* at 214.  The

17  court held that the defendant parent company could enforce the arbitration

18  agreement between the plaintiff and the defendant's subsidiary because the plaintiff

19  sued both the parent and subsidiary, "bringing identical claims against them." *Id.*

20  So too here.  Plaintiffs sued both Ticketmaster (the subsidiary) and Live Nation (the

21  parent), bringing identical claims against both entities.

22  Plaintiffs attempt to minimize *Hart* and the other cases on which Defendants

23  rely by arguing that a non-signatory can enforce an arbitration clause *only* where the

24  claims against the non-signatory are "inextricably intertwined" with the contract in

25  _____

26  [6]   Plaintiffs assert that by using the phrases "either of us" and "we both consent,"
    the Terms must encompass only one party other than the user. Opp. at 10-11.  This

27  is wrong.  Those phrases, taken together with the repeated mentions of Live Nation
    *and* Ticketmaster, describe two sides *of a dispute*—with the user on one side, and

28  whichever entity (or entities) the user decides to sue on the other.  Indeed, both
    phrases appear in the Terms' "disputes" section.  *E.g.*, Tobias Decl. Ex. 45 at 195.

which the clause appears.  Opp. at 7-8.  This is nothing but misdirection.  In all of Defendants' cases, the relationship between the plaintiffs' claims and the underlying contract—if there even was one—played no role in the courts' decisions to allow the non-signatory parents to enforce their subsidiaries' arbitration agreements.  *Hart*, 814 F. App'x at 214; *Naria v. Trover Sols., Inc.*, 967 F. Supp. 2d 1332, 1339 (N.D. Cal. 2013) ("As the parent company of Healthcare Recoveries, Trover Solutions, Inc. may compel arbitration of plaintiff's claim."); *McLeod v. Ford Motor Co.*, No. EDCV 04-1255, 2005 WL 3763354, at *4 (C.D. Cal. Apr. 14, 2005) ("Plaintiffs' fraud claims against [subsidiary] and [parent] are 'based on identical factual allegations,' and [parent] therefore may enforce the arbitration agreements in Plaintiffs' contracts with [subsidiary] to the same extent as [subsidiary] itself … .").  Live Nation can enforce the Terms whether or not it is a signatory.

## III.   PLAINTIFFS ASSENTED TO THE TERMS

Plaintiffs' next argument is that they did not assent to arbitration because they did not have notice of the Terms.  Opp. at 12-24.  In particular, Plaintiffs claim that they did not have "actual knowledge" of the Terms.  *Id.* at 13; Decls. of Oberstein, Matty, and Burke ¶ 4, ECF Nos. 96-98.  This claim, however, is contradicted by the allegations in their own Complaint, where Plaintiffs admit that they each "review[ed] the terms of purchases on Ticketmaster" before they "discovered" the conduct alleged and filed this lawsuit.  Am. Compl. ¶ 124, ECF No. 81.  Regardless, the law does not require a user to have "actual knowledge" of terms of use to be bound by them, and a user's choice not to read the terms does not invalidate the arbitration agreement.  *See Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (the validity of online terms of use "depends on whether the user has actual *or* constructive knowledge of a website's terms and conditions," and a plaintiff "cannot avoid the terms of [the] contract on the ground that he … failed to read it before signing") (emphasis added).

What matters is whether Plaintiffs had *constructive notice* of the Terms.

Numerous courts—including this one—have found that Live Nation and Ticketmaster notices identical or substantially similar to the ones that Plaintiffs saw here provide constructive notice.[7]   *See* Mot. at 16-18.   Plaintiffs attempt to circumvent these cases by relying on other (entirely distinguishable) ones, and arguing that constructive notice is a "question of fact."   *See* Opp. at 13-20.   But, as Plaintiffs acknowledge, the "issue of constructive notice" is a "question of fact" *only* where "the 'material evidence' concerning constructive notice 'is the subject of dispute.'"   *Id.* at 14.   And Plaintiffs have not identified a single material factual dispute here.   Based on the undisputed evidence and as a matter of law, Plaintiffs had constructive notice of the Terms and therefore agreed to arbitrate their claims.

### A.   Plaintiffs Do Not Dispute That Defendants' Screenshots Accurately Depict the Webpages Plaintiffs Saw

Plaintiffs do not dispute that the screenshots Defendants submitted with their motion show *exactly* what Plaintiffs Oberstein, Burke, and Matty saw when they signed in and purchased tickets on Defendants' websites.[8]   For example, there is no dispute that the first screenshot excerpted below depicts *exactly* what Plaintiffs Oberstein and Burke saw when they signed in to the Ticketmaster desktop site in February 2020 and January 2021, respectively; nor is there a dispute that the second screenshot excerpted below depicts *exactly* what Plaintiff Matty saw when he signed

---

[7]   In addition, Plaintiffs' allegation that they "review[ed] the terms" supports a finding of constructive notice. *See Fteja v. Facebook Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) ("[Plaintiff's] allegation that he complied with the Terms of Use suggests that he had constructive knowledge of the Terms of Use.").

[8]   Plaintiffs repeatedly mischaracterize Defendants' screenshots as "excerpts." Opp. at 18.   While Ms. Tobias acknowledged that the screenshots "included *within* [her] declaration" are excerpts, she testified that the "*full screenshots are attached as exhibits*" to the declaration. Ex. G at 200:11-14, ECF No. 92-3 (emphases added). Plaintiffs do not dispute that the screenshots attached as exhibits to Ms. Tobias's declaration are accurate and depict *exactly* how the full webpages appeared during the stated time periods.   Moreover, the fact that Defendants' screenshots do not depict "the appearance of the websites over the entire class period" is irrelevant. *See* Opp. at 18.   The screenshots depict the appearance of the websites when *these named Plaintiffs* interacted with them.   *See* Mot. at 8-12.   Plaintiffs cite no authority stating that Defendants must prove how the sites appeared "over the entire class period."

in to the Ticketmaster mobile site in December 2020:



Decl. of Shawn Moon ("Moon Decl.") ¶¶ 5, 12, 18, ECF No. 86; Tobias Decl. ¶¶ 8-9, 25 & Exs. 4-5, 22.  These sign-in pages required Oberstein, Burke, and Matty to input their user credentials and click a "Sign In" button, at which point they were notified: "By continuing past this page, you agree to the **Terms of Use**."  Tobias Decl. ¶¶ 8-9, 25 & Exs. 4-5, 22.  Two courts have held that the _exact same_ Ticketmaster sign-in page provided constructive notice of the Terms.  *Hansen v. Ticketmaster Entm't, Inc.*, No. 20-cv-02685, 2020 WL 7319358, at *3-5 (N.D. Cal. Dec. 11, 2020); *Ajzenman v. Office of Comm'r of Baseball*, No. CV 20-3643, 2020 WL 6031899, at *3-5 (C.D. Cal. Sept. 14, 2020).[9]  And the Ninth Circuit has approved a Ticketmaster sign-in page that was substantially similar to the one that Oberstein, Burke, and Matty saw in 2020 and 2021.  *Lee*, 817 F. App'x at 394-95.[10]

There is also no dispute about the appearance of the pages that Plaintiffs

---

[9]   These courts did not specifically discuss the Ticketmaster mobile site sign-in page that Matty saw in December 2020, but that page—as shown above—is nearly identical to the Ticketmaster desktop site sign-in page which Oberstein and Burke saw, and which was at issue in *Ajzenman* and *Hansen*.  *Compare* Tobias Decl. Ex. 22 (Dec. 2020 mobile sign-in page, which Matty saw) *with id.* Exs. 4-5 (Jan. 2021 and Feb. 2020 desktop sign-in pages, which Burke and Oberstein saw).

[10]   In addition, when Burke signed in and purchased tickets in July and October 2018, she saw a sign-in page that was _exactly the same_ as the sign-in page approved by the Ninth Circuit in *Lee*.  Moon Decl. ¶¶ 10(e)-(f); Tobias Decl. ¶ 10 & Ex. 6.

encountered when they purchased their tickets *after* signing in.  For example, Plaintiffs do not dispute that the first screenshot excerpted below depicts *exactly* the notice that Oberstein saw when he purchased a ticket on the Ticketmaster desktop site in February 2020; nor do they dispute that the second screenshot excerpted below depicts *exactly* the notice that Burke saw when she purchased tickets on the Ticketmaster desktop site in July and October 2018:

 

Moon Decl. ¶¶ 5(a), 10(e)-(f); Tobias Decl. ¶¶ 14-15 & Exs. 10-11.  On these pages, Oberstein and Burke were required to fill out payment and billing information and click a "Place Order" button, at which point they were again notified that they "agree to [the] **Terms of Use**" by "clicking 'Place Order.'"  Tobias Decl. ¶¶ 14-15 & Exs. 10-11.  The first notice (which Oberstein saw) is *exactly the same notice* that was at issue in *Ajzenman*, and which the court found sufficient to bind the plaintiff to the Terms.  *Ajzenman*, 2020 WL 6031899, at *3-5.  And the second notice (which Burke saw multiple times) is *exactly the same notice* that was at issue in *Lee*, where the Ninth Circuit concluded that the plaintiff "validly assented to Ticketmaster's Terms of Use, including the arbitration provision … each time he clicked the 'Place Order' button when placing an order for tickets."  *Lee*, 817 F. App'x at 394-95.

Likewise, Plaintiffs do not dispute what they saw on the numerous other occasions when they signed in and purchased tickets on Defendants' websites.  *See* Mot. at 8-12; Moon Decl. ¶¶ 5, 7, 10, 12, 15.  Plaintiffs' repeated use of those websites—their repeated sign ins and purchases—reinforces that they agreed to and are bound by the Terms.  *See Lee*, 817 F. App'x at 395 ("The fact that Lee indicated his assent to Ticketmaster's Terms of Use roughly twenty times during the relevant

1    period only reinforces that he had many such opportunities.").

2    **B.    Defendants' Webpages Provided Sufficient Notice of the Terms**

3    As explained above and in Defendants' opening papers, courts have enforced

4    Defendants' Terms based on the exact same notices on the sign-in and purchase

5    pages that Plaintiffs here saw. *Lee*, 817 F. App'x at 394-95; *Hansen*, 2020 WL

6    7319358, at *3-5; *Ajzenman*, 2020 WL 6031899, at *3-5.  And other courts—

7    including this one—have approved substantially similar notices on Defendants'

8    websites.  *See, e.g.*, *Dickey v. Ticketmaster LLC*, No. CV 18-9052, 2019 WL

9    9096443, at *5-7, *10 (C.D. Cal. Mar. 12, 2019); *Nevarez v. Forty Niners Football

10   Co., LLC*, No. 16-CV-07013, 2017 WL 3492110, at *7-10 (N.D. Cal. Aug. 15,

11   2017); *Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cty.*, No. 12-CV-

12   6125, 2014 WL 3672128, at *3 (W.D. Ark. July 23, 2014).  Plaintiffs' response is

13   that these cases "did not consider the precedential decision in *Wilson*, which states

14   that non-clickwrap approaches often do not suffice, and trigger a factual inquiry:

15   'Instead of requiring a user to affirmatively assent, [the defendant] chose to gamble

16   on whether its users would have notice of its Terms.  The odds are not in its favor.'"

17   Opp. at 13 (quoting *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019)).

18   *Wilson* does not articulate any new or different standard for constructive

19   notice, and it certainly does not hold that "non-clickwrap approaches" trigger a

20   "factual inquiry" about what the defendant "chose" to do.  The standard set forth in

21   *Wilson* is exactly the same as the one used in *Lee*, *Ajzenman*, *Hansen*, *Dickey*, and

22   other cases: "In the context of online agreements, the existence of mutual assent

23   turns on whether the consumer had reasonable notice of the terms of service

24   agreement," and constructive notice is evaluated "based on the conspicuousness and

25   placement of the terms." *Wilson*, 944 F.3d at 1219-20 (citing *Nguyen v. Barnes &

26   Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)).  The statement in *Wilson* that the

27   defendant "chose to gamble on whether its users would have notice of its Terms" is

28   irrelevant *dicta* referencing the specific, and obviously problematic, notices at issue

in that case.  *Id.* at 1221.  For instance, among other glaring problems, the notice of terms in *Wilson* was buried deep in the app—nowhere near any button the user would ever need to click—and did not even link to the terms (instead, the user had to copy and paste or manually enter a URL into a web browser to access the terms).  *Id.* at 1214.  That does not remotely resemble the notices at issue here—which are located directly adjacent to buttons that the user must click; clearly inform users that by taking a specified action ("continuing past this page" or "clicking 'Place Order'"), they "agree to the Terms of Use"; and hyperlink to the full text of the Terms.  *See, e.g.*, Tobias Decl. Exs. 4-5, 10-11, 22.

These features also make Defendants' notices distinguishable from the other cases Plaintiffs cite.  In *Nicosia v. Amazon.com, Inc.*, for example, the notice informing users that they agree to the terms "[b]y placing [an] order" was not near the "Place your order" button.  834 F.3d 220, 236-37, 241 (2d Cir. 2016).  And in *Kauders v. Uber Techs., Inc.* and *Cullinane v. Uber Techs., Inc.*—both of which involved the same pages on the Uber app—the notice (among other problems) "was displayed in a dark gray small-sized non-bolded font against a black background," rendering it barely visible, and the hyperlink did not have the "common appearance" of a hyperlink, but rather was plain white.  159 N.E.3d 1033, 1052 (Mass. 2021); 893 F.3d 53, 63-64 (1st Cir. 2018); *see also Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764 (N.D. Cal. 2019) (hyperlink to terms "was not a different color, underlined, italicized, or in any way visually distinct from the surrounding text").  Here, by contrast, the notices were clearly visible (dark gray or black against a white background) and directly adjacent to the relevant buttons.  And the "Terms" hyperlink always had the "common appearance" of a hyperlink: bold and blue.  As the court in *Hansen* found, "[t]he proximity of the text to the … button makes the text conspicuous," and "the phrase 'Terms of Use' appears in blue font so that there is even more contrast" with the other text in the notice and the page's background.

REPLY ISO AM. MOT.
TO COMPEL ARBITRATION
CASE NO. 2:20-CV-03888-GW-GJS

1 *Hansen*, 2020 WL 7319358, at *4.[11]  Plaintiffs thus had constructive notice.

2    ## C.    Clickwrap Is Not Required for Constructive Notice

3        As discussed above, there is no dispute at all about the webpages that Plaintiffs

4 saw—and courts have consistently found that exactly what these Plaintiffs saw is

5 sufficient to bind them to the Terms.  Nevertheless, Plaintiffs argue (based on a

6 single produced document) that Defendants "could have" used "clickwrap" on their

7 webpages but made a "deliberate decision" not to, and claim (based on three cases)

8 that this choice "presumptively demonstrates a lack of constructive notice."  Opp. at

9 15-16.  This is wrong.  First, the cases that Plaintiffs cite (*Wilson*, *Nicosia,* and

10 *Kauders*) do not support any such "presumption."  All they state is that, where

11 clickwrap is not employed, courts should "consider the totality of the circumstances"

12 to determine if "assent may be inferred from other actions the users have taken."

13 *Kauders*, 159 N.E.3d at 1051; *see also Nicosia*, 834 F.3d at 233; *Wilson*, 944 F.3d

14 at 1220-21.  Numerous courts have conducted this analysis of the exact webpages at

15 issue here and concluded that such assent may be inferred.  *See supra* Section III.A.

16 As the Ninth Circuit explained: "Although the Terms do not constitute a true pure-

17 form clickwrap agreement as California courts have construed it … , Ticketmaster's

18 website provided sufficient notice for constructive assent."  *Lee*, 817 F. App'x at

19 394.  That Defendants "could have" used clickwrap is irrelevant as a matter of law,

20 because their webpages provide sufficient notice of the Terms without it.

21        Moreover, the one produced document that Plaintiffs rely on for this argument

22

23 [11]  The court in *Hansen* specifically rejected several of the arguments that Plaintiffs
make here about the same webpages, including that Defendants' notices were
inconspicuous because (1) the Terms hyperlink was not underlined and (2) there was
24 "distracting" content on the pages.  *See* Opp. at 16-17; *Hansen*, 2020 WL 7319358,
at *4 (finding that (1) the plaintiff's argument that "'Terms of Use' should have been
25 underlined … [was] not overly compelling," and that (2) the "sign-in page at issue,"
which was the same as the sign-in pages shown in Section III.A above, "was
26 relatively uncluttered" and "the sign-in box itself was prominently featured").
Plaintiffs' argument that the Terms notice is insufficient because it "asked only
27 whether consumers agree, not whether they have read the Terms" also fails.  Opp. at
18.  Numerous cases have found Defendants' notices sufficient where those notices
28 did not contain the word "read."  *See, e.g.*, *Lee*, 817 F. App'x at 394; *Ajzenman*,
2020 WL 6031899, at *4; *Hansen*, 2020 WL 7319358, at *3.

1  does not actually support their assertion that Defendants made a "deliberate

2  decision" not to use clickwrap, or that they "belie[ved] that customers would be less

3  likely to notice the Terms absent … clickwrap." *See* Opp. at 15 (citing Ex. O, ECF

4  No. 92-6).  This document—an internal email chain among Ticketmaster product

5  group employees—simply describes the mechanics of how the "opt-in" checkbox

6  on the billing page will function.  Ex. O, ECF No. 92-6.  It certainly does not, as

7  Plaintiffs claim, indicate any "belief" that "customers would be less likely to notice

8  the Terms absent … clickwrap," nor does it demonstrate any "deliberate decision"

9  *not* to use clickwrap.  *See* Opp. at 15.  In any event, as this Court has recognized,

10  evidence "tied to Defendants' subjective intent" is "irrelevant."  ECF No. 59 at 2.[12]

11     **D.     The Court Should Not Consider the Analysis of Plaintiffs' Expert**

12         The Court should disregard the analysis of Plaintiffs' purported expert,

13  Dr. Andre.  Defendants are aware of only one case finding such expert analysis

14  relevant to the question of constructive notice—*Arena v. Intuit Inc.*, 444 F. Supp. 3d

15  1086 (N.D. Cal. 2020)—and the Ninth Circuit *reversed* that opinion last year,

16  finding that expert analysis is *not* material evidence of whether a notice is

17  sufficiently conspicuous.  *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir.

18  2020).[13]  Specifically, the Ninth Circuit found that the "material evidence" on appeal

19  "consist[ed] exclusively of screenshots from the Web site," and expressly stated that

20  "the opinion of Plaintiffs' cognitive science expert [did] not affect [its] conclusion."

21

22  [12]  The other produced documents that Plaintiffs cite elsewhere in their brief are
irrelevant for the same reasons.  *See* Opp. at 18 (citing Exs. Q, R, ECF Nos. 92-7,

23  92-8).  Plaintiffs argue that these documents "reveal Defendants themselves believed
[their] design decisions advanced their business goals, such as 'cart conversion' …

24  and 'less friction.'"  *Id.*  Not so.  These documents say nothing about Defendants'
"design decisions" relating to the notices of the Terms, *see* Exs. Q, R, ECF Nos. 92-

25  7, 92-8, and are irrelevant to whether there was constructive notice.

26  [13]  Plaintiffs cite *Ticketmaster L.L.C. v. RMG Techs., Inc.* to support their reliance
on expert analysis, but the analysis of Ticketmaster's expert in that case (a copyright

27  infringement case) had nothing to do with constructive notice of the Terms; rather,
it concerned whether the defendant "necessarily had to view ticketmaster.com" and

28  thus "made copies of pages from the copyrighted website."  507 F. Supp. 2d 1096,
1106 (C.D. Cal. 2007).

REPLY ISO AM. MOT.
TO COMPEL ARBITRATION
CASE NO. 2:20-CV-03888-GW-GJS

1  *Id.* at 483-84 & n.3.[14]  Likewise, Plaintiffs' expert's analysis is immaterial here.

2  In any event, Plaintiffs' expert holds Defendants to a standard that the law

3  does not require.  Dr. Andre opines that Defendants' webpages "do not conform

4  with" what, in his opinion, are the "best practices" for user interface design, Opp. at

5  21, but that is not the relevant benchmark.  *See Nguyen*, 763 F.3d at 1177 (evaluating

6  constructive notice from the perspective of a "reasonably prudent user").   For

7  example, Dr. Andre faults Defendants for using a "65% (0.65) opacity level" for the

8  Terms notices, which he says "causes otherwise black text to appear light grey."

9  Andre Decl. ¶¶ 61-64, ECF No. 92-2.  But the fact that the notice text appears grey

10 does not make it inconspicuous; indeed, the court in *Hansen* rejected exactly that

11 argument.  2020 WL 7319358, at *4 ("[T]he grey [text of the notice] is in sufficient

12 contrast to the background which is white.").[15]  Dr. Andre's opinions do not affect

13 the conclusion, reached by numerous courts (including this one), that Defendants'

14 webpages provided sufficient notice of the Terms.

15 **E.    The Terms Provided Sufficient Notice of the Arbitration Clause**

16 Plaintiffs also argue that, prior to June 25, 2019, the "layout" of the Terms

17 "failed to provide reasonable inquiry notice" because the arbitration provision

18 "appeared on the fifth page of the Terms" instead of the "first page."  Opp. at 19.

19 Plaintiffs are wrong.   Prior to June 25, 2019, the Terms had a **bold** heading

20

---

21 [14]  As this Court previously recognized, "[t]he implication is that the Ninth Circuit
   did not consider the [other evidence] which the district court relied on"—such as
22 "click data" showing how many users click on the defendant's terms of use—"to be
   material evidence."  ECF No. 46 at 3.  Plaintiffs assert that *Dohrmann*'s holding
23 does not apply here, because, in *Dohrmann*, "there was no evidence giving rise to a
   factual dispute, so the issue was an issue of law" in that case.  Opp. at 20 n.24.  But
24 Plaintiffs do not identify *any* "factual dispute" that distinguishes this case from
   *Dorhmann*.  Indeed, as discussed, there is no dispute about the material facts here.

25 [15]  Dr. Andre's opinion that Defendants have "pervasively altered the opacity of the
   textual notice to the Terms of Use hyperlink to make it less visible to users" is
26 entirely unsupported.  *See* Andre Decl. ¶ 63, ECF No. 92-2.  The document that
   Dr. Andre relies on for this assertion is completely unrelated to the Terms and is not
27 used by the people who design the notices of the Terms (i.e., Defendants' legal
   team); it is a random "typography" document Plaintiffs pulled from somewhere on
28 the Ticketmaster website.  *See* Ex. P, ECF No. 94-16; Reply Decl. of K. Tobias ¶¶
   3-4 ("Tobias Reply Decl.").

identifying the arbitration clause.  *See* Tobias Decl. Exs. 46-52, 56-62; *Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688, 2017 WL 4676580, at *6 (C.D. Cal. June 1, 2017) (arbitration clause sufficiently conspicuous where it was "separated via headings and contained a capitalized disclaimer that arbitration waived [the] entitlement to a jury trial").  This bold heading provided more than sufficient notice. And Defendants were "under no obligation to highlight the arbitration clause of [their] contract, nor [were they] required to specifically call that clause to [Plaintiffs'] attention." *Loewen v. Lyft*, 129 F. Supp. 3d 945, 957 (N.D. Cal. 2015). In any event, Plaintiffs' argument is irrelevant to the outcome of this motion, because Plaintiffs do not dispute that the "layout" of the Terms provided constructive notice of the arbitration clause *after* June 25, 2019.  *See* Opp. at 19.  And Oberstein, Matty, and Burke each assented to the Terms after that date—when (1) the arbitration agreement was identified in a bold, all-caps heading on the first page of the Terms, (2) the Table of Contents linked directly to the arbitration agreement, and (3) the arbitration agreement was identified in bold, all-caps text in the relevant section. *See* Moon Decl. ¶¶ 5(a)-(b), ¶¶ 12(a)-(b), ¶ 18(a); Tobias Decl. Exs. 41-45, 53-55.

## IV.  PLAINTIFFS CANNOT USE THE CONDITIONAL LICENSE EXCEPTION TO AVOID ARBITRATION

### A.  The Applicability of the Exception Is a Question for the Arbitrator

Plaintiffs also argue that their claims belong in court pursuant to the "conditional license" exception to the Terms' arbitration clause.  Opp. at 26-29.  The Court, however, has no power to decide whether this exception applies here.  The arbitration clause Plaintiffs accepted provides that "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the *interpretation*, *applicability*, *enforceability*, or *formation* of this Agreement." Tobias Decl. Ex. 45 at 195 (emphasis added).  This Court and numerous others have already determined that this *exact* language "meets the requisite 'clear and

unmistakable' standard" for delegating arbitrability questions to the arbitrator, "and the Court therefore may not override the parties' choice" to delegate such questions. *Dickey*, 2019 WL 9096443, at *8; *see also Tezak v. Live Nation*, No. 20-CV-2482, 2021 WL 916081, at *2 (N.D. Ill. Mar. 10, 2021); *Ajzenman*, 2020 WL 6031899, at *4; *Lee v. Ticketmaster L.L.C.*, No. 18-CV-05987, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019); *Himber v. Live Nation*, No. 16-CV-5001, 2018 WL 2304770, at *5 (E.D.N.Y. May 21, 2018).

Nevertheless, Plaintiffs argue that the conditional license exception somehow renders the delegation clause "ambiguous" because it states that the parties "consent to the jurisdiction" of certain federal or state courts. Opp. at 27. Plaintiffs are wrong. The jurisdictional provision in the conditional license exception ensures that the parties have agreed to a particular venue in the event that one of them brings a claim in court that actually involves the conditional license. This is not inconsistent with the parties' agreement to delegate to an arbitrator the issue of whether a claim implicates the conditional license exception in the first place. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (holding that provisions "to identify the venue for any other claims that were not covered by the arbitration agreement … do[] not conflict with or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments"); *Taylor v. Shutterfly, Inc.*, No. 18-CV-00266, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) ("[A]n express delegation provision is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court.").[16]  Courts have thus repeatedly rejected the argument that Plaintiffs

---

[16]   None of the cases Plaintiffs cite hold otherwise.  *E.g.*, *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (delegation provision "silent as to who should decide arbitrability"); *Armor ALL/STP Prods. Co. v. TSI Prods.*, 337 F. Supp. 3d 156, 164 (D. Conn. 2018) (agreement did not expressly delegate arbitrability questions to arbitrator); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 281-82 (5th Cir. 2019) (same); *Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *6 (N.D. Cal. Mar. 14, 2016) (relying on the later-overruled *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015)).

make here.   As the district court in *Lee* explained: "The parties 'clearly and unmistakably' delegated authority to determine threshold questions to the arbitrator," and the "presence of a provision allowing the parties to file suit in court for intellectual property claims does not change that."   *Lee*, 2019 WL 9096442, at *1 (enforcing exact same delegation clause at issue here); *see also Dickey*, 2019 WL 9096443, at *9 ("reject[ing] Plaintiff's argument that the delegation clause [in the Terms] is 'rendered uncertain' by the conditional license carve-out").

Plaintiffs' other arguments with respect to the delegation clause are equally meritless.   They take issue with the capitalization of the word "Agreement" in the delegation clause, arguing that it must mean "the Terms other than the arbitration provision."   Opp. at 28.   It is nonsensical to interpret "Agreement" to <u>*exclude*</u> the arbitration clause; the arbitrator clearly has been delegated disputes regarding that clause, regardless of whether "Agreement" refers to the arbitration clause or the Terms as a whole.   And Plaintiffs' argument that the combination of the limitation of liability provision and the small claims exception to the arbitration agreement somehow makes delegation uncertain fares no better.   *See* Opp. at 28-29.   The Terms unambiguously (1) limit Defendants' liability to the extent permitted by law (Section 15), and (2) exempt small claims from the arbitration agreement (Section 17)—and one does not somehow render the other unclear.   Tobias Decl. Ex. 45 at 195-96.

## B.   Plaintiffs' Claims Do Not Involve the Conditional License Granted to Them

Per the clear, unmistakable delegation clause, Plaintiffs' argument about the conditional license is a question for the arbitrator.   It also fails on the merits.   The Terms grant to consumers (like Plaintiffs) a conditional license which allows them to view Defendants' websites in exchange for an agreement not to engage in certain defined conduct, such as deploying "viruses" or using "ticket bot technology."   *Id.* at 192.   The conditional license's exception to the arbitration clause, in turn, allows the parties to file suit in court if the claim "involves the conditional license *granted*

1   *to you*"—i.e., the consumer.  *Id.* at 195 (emphasis added).

2   Plaintiffs' claims do not remotely involve the conditional license granted to

3   them.  Rather, in an attempt to shoehorn their allegations into the realm of the

4   conditional license (and thus plead around the arbitration clause), Plaintiffs allege

5   that their claims involve a conditional license purportedly granted to "secondary

6   ticket brokers."  *See, e.g.*, Am. Compl. ¶ 9 (alleging that Defendants were "using the

7   [conditional] license as a bludgeon to force secondary ticket brokers into agreeing

8   to exclusively use Ticketmaster's secondary ticketing platform"); *id.* ¶ 99 (alleging

9   conditional license is "the sword Ticketmaster wields against ticket brokers").  But

10  Plaintiffs are not "secondary ticket brokers."  Indeed, "ticket brokers" are

11  specifically excluded from the purported class.  *Id.* ¶¶ 20-22, 126.  And Plaintiffs

12  cannot avoid arbitration by asserting that their claims involve the conditional license

13  granted *to others*.  *See* Tobias Decl. Ex. 45 at 195.  That is not what the Terms say.

14  **V.   THE DELEGATION AND ARBITRATION CLAUSES ARE NOT**

15  **UNCONSCIONABLE**

16  Finally, Plaintiffs argue that both the delegation clause and the arbitration

17  clause are unenforceable because they are unconscionable.  Opp. at 29-35.  Because

18  the delegation clause is clear and unmistakable, however, the Court must send any

19  gateway arbitrability questions (including whether the arbitration clause is

20  unconscionable) to the arbitrator—unless the delegation clause is itself

21  unconscionable.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-33 (9th Cir.

22  2015).  This Court has already held that the exact same delegation clause at issue

23  here is not unconscionable, and none of Plaintiffs' arguments change that result.

24  *Dickey*, 2019 WL 9096443, at \*9.  Plaintiffs' enforceability challenges should

25  therefore be sent to the arbitrator.  In any event, those challenges are meritless.

26  **A.   *OTO v. Kho* Does Not Impact or Alter the Court's Holding in *Dickey***

27  Plaintiffs concede that this Court, in *Dickey*, held there was no "substantive

28  unconscionability with respect to the delegation clause" at issue here.  Opp. at 30.

Nevertheless, Plaintiffs attempt to circumvent the Court's holding in *Dickey* by asserting a false premise: that the California Supreme Court in *OTO L.L.C. v. Kho*, 8 Cal. 5th 111 (2020), "clarified the law" and held "for the first time" that the more procedural unconscionability is present, the less substantive unconscionability is required.  Opp. at 29-30.  That is wrong.  The issue in *OTO* was narrow and is inapposite here: whether an arbitration agreement requiring an employee to waive his statutory right to an administrative proceeding to recover unpaid wages was enforceable.  *OTO*, 8 Cal. 5th at 117, 121-22.  The court held that, "given the substantial procedural unconscionability," including that plaintiff would lose his job unless he signed the agreement immediately, "even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." *Id.* at 127-28, 130.  This "sliding scale" concept is not new—nor is the fact that it operates in both directions.   Indeed, it is well-established that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required … *and vice versa*."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (emphasis added).  There is no basis for the Court to revisit its decision in *Dickey* based on *OTO*—or any of the other arguments that Plaintiffs raise.

## B. The Delegation Clause Is Not Unconscionable

### 1. *Procedural Unconscionability*

*First*, Plaintiffs argue that, because the Terms are a contract of adhesion, the delegation clause is procedurally unconscionable.  Opp. at 30.  But where contracts of adhesion cover non-essential recreational activities, courts find that those contracts are not procedurally unconscionable because "the consumer always has the option of simply foregoing the activity." *Pokrass v. The DirecTV Grp., Inc.*, 2008 WL 2897084, at *6 (C.D. Cal. July 14, 2008) (television); *see also Bauer v. Atlantis Events, Inc.*, 2014 WL 12603112, at *3 (C.D. Cal. Mar. 5, 2014) (vacation); *Adkins v. Facebook, Inc.*, No. C 18-05982, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9,

2019) (social media service).  Here, Plaintiffs had the option to forego purchasing event tickets—which is plainly a non-essential recreational activity.

*Second*, Plaintiffs claim that, because Defendants' websites only "hold" tickets for a certain amount of time during the purchase process, Plaintiffs had limited time to review the delegation clause before their tickets were "lost" due to "high demand."  Opp. at 31.  Plaintiffs are wrong.  Each Plaintiff has signed in to his or her account—and agreed to the Terms—*without* making a purchase.  For example, Oberstein signed in to his account on April 18, 2019; he added a phone number to his account, but did not purchase any tickets.  Moon Decl. ¶ 7.  Burke signed in to her account on August 6, 2020, and Matty signed in to his account on December 23, 2020;[17] on those occasions, Burke and Matty added phone numbers to their accounts, and verified email addresses, but did not purchase any tickets.  *Id*. ¶¶ 12, 18.  When Plaintiffs affirmatively accepted the Terms on these occasions, there was certainly no "threat" that "their reservation/hold on the tickets [would be] lost," somehow impairing their ability to review the Terms.  Opp. at 31; *see also* Andre Decl. ¶ 82, ECF No. 92-2 (conceding that "it is possible that a user could avoid the [ticket-hold] timer (*i.e.*, by signing in before selecting tickets)").  If Plaintiffs nevertheless chose not to review the Terms, that does not invalidate the arbitration agreement. *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).  In any event, the ticket hold has nothing to do with the amount of time a user has to review the Terms or the delegation clause.  It is simply a courtesy hold on the tickets selected, during which time no other user can purchase those particular tickets; after the hold expires, the tickets are again made available to all users.  Tobias Reply Decl. ¶¶ 6-8.  If a user wants to take more time to review the Terms before making her purchase, she is completely free to do so.[18]

---

[17]   Burke and Matty did not join the case until Jan. 2021.  Am. Compl., ECF No. 81.

[18]   Further, Plaintiffs have not shown that: (1) there was actually a courtesy hold in place when they purchased tickets, (2) they were aware of the hold and the amount

1    *Third*, the delegation and arbitration clauses are not "buried" in the Terms.

2    *See* Opp. at 31.  For example, Plaintiffs each agreed to Terms in which (1) the

3    delegation clause is set apart from the other text in a paragraph with just two

4    sentences and several lines, (2) the arbitration agreement is called out via a bold, all-

5    caps heading on the first page of the Terms, (3) the Table of Contents links directly

6    to a section of the Terms titled "Disputes, Including Mandatory Arbitration and

7    Class Action Waiver," and (4) the arbitration agreement is again called out in bold,

8    all-caps text in the relevant section.  *E.g.*, Tobias Decl. Ex. 45 at 191, 195-96; Moon

9    Decl. ¶¶ 5, 12, 18.   Courts have held that similarly conspicuous clauses are

10   enforceable.  *See, e.g.*, *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 247 n.12 (no

11   surprise where arbitration agreement appeared "in a separate article under a bold,

12   capitalized, and underlined caption" referencing disputes, and "within a separate

13   section with [a] bold and underlined title" referencing arbitration).  In any event, as

14   discussed *supra* Section III.E, a company is "under no obligation to highlight the

15   arbitration clause of its contract."  *Loewen*, 129 F. Supp. 3d at 957.

16   *Fourth*, contrary to Plaintiffs' suggestion, there is no requirement that a

17   consumer have formal legal training, or the assistance of an attorney, in order to

18   validly assent to delegation or arbitration.  *See* Opp. at 31.  It is the consumer's

19   responsibility to read a contract before signing it.  *See, e.g.*, *Tompkins*, 2014 WL

20   2903752, at *8.  The delegation and arbitration clauses are written in plain English,

21   separated by paragraph breaks and headings, and invite users to reach out with

22   questions.  *E.g.*, Tobias Decl. Ex. 45 at 195-96.

23   The delegation clause is not procedurally unconscionable; the analysis should

24   stop there, because "a court can only find an agreement unconscionable if it is both

25   procedurally *and* substantively unconscionable."  *Dickey*, 2019 WL 9096443, at *9.

26

27   of time until it expired, or (3) the events for which they purchased tickets "were in
high demand and sold out in minutes."  Opp. at 31; *see Pinnacle Museum Tower*

28   *Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012) ("The party
resisting arbitration bears the burden of proving unconscionability.").  In fact, most
events do not sell out at all, let alone "in minutes."  Tobias Reply Decl. ¶ 10.

REPLY ISO AM. MOT.
TO COMPEL ARBITRATION
CASE NO. 2:20-CV-03888-GW-GJS

### 2.    *Substantive Unconscionability*

In any event, the delegation clause is not substantively unconscionable either. *First*, Plaintiffs argue that the exception for claims related to the conditional license renders the delegation clause non-mutual.  Opp. at 32-33.  But this Court already held in *Dickey* that the conditional license exception "does not render the delegation provision substantively unconscionable" because it "applies to Ticketmaster's claims against a user *and* to a user's claims against Ticketmaster." *Dickey*, 2019 WL 9096443, at *9.  Nothing has changed that would alter that holding.[19]   A clause—like the one in the Terms—that "delegates *all* issues of interpretation, applicability, and enforceability of the agreement" is not one-sided because "[n]o argument can be made that only [a consumer] would raise an issue of 'interpretation, applicability, or enforceability.'" *See Malone v. Super. Ct.*, 226 Cal. App. 4th 1551, 1564 (2014); *e.g.*, Tobias Decl. Ex. 45 at 195.  In other words, the delegation clause is mutual because any dispute about the interpretation or applicability of the exception, raised by either party, is for the arbitrator to decide.[20]

*Second*, Plaintiffs are wrong that Defendants' ability to cancel a user's account somehow makes the delegation clause one-sided.  *See* Opp. at 33.  The Terms allow Defendants to cancel a user's account if, for example, the user's content does not comply with the Terms (Section 5), or the user has violated the law (Section 13). *E.g.*, Tobias Decl. Ex. 45 at 193-94.  The fact that this could happen while the parties are arbitrating "whether a carveout [to the arbitration clause] applies to [the user's] claims" does not render the delegation clause one-sided.  *See* Opp. at 33.  Moreover,

---

[19]  In their opposition, Plaintiffs claim that "Defendants' new, post-*Dickey* interpretation" somehow compels a different result.  Opp. at 32.  But there is no "new, post-*Dickey* interpretation" of the exception; Defendants argued in *Dickey*—and argue now—that either party with a claim that "involves the conditional license granted to you" may sue in court.  *See* Reply in Supp. of Mot. to Compel Arb. at 10-11, *Dickey v. Ticketmaster LLC*, No. 18-9052 (C.D. Cal. Feb. 8, 2019), ECF No. 29.

[20]  None of the cases Plaintiffs cite hold otherwise—or even address delegation clauses.  Rather, they involved agreements that clearly exempted an employer's claims from arbitration.  *See, e.g., Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 784-85 (9th Cir. 2002).

unlike the agreements in the cases Plaintiffs cite, the Terms do not grant Defendants access to a non-arbitral forum that consumers cannot use. *See Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 72 (2020) (plaintiff had to arbitrate her claims, but defendant did not have to arbitrate its claims); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 854-55 (2001) (plaintiffs had to arbitrate "any controversy," but defendant could proceed by foreclosure, set-off, or injunctive relief).[21] Rather, the Terms delegate _all_ disputes about arbitrability to the arbitrator.

_Finally_, the delegation clause does not make the exception for small claims "illusory" or "one-sided." Opp. at 33. The Terms provide: "You may assert claims in small claims court if your claims apply." *E.g.*, Tobias Decl. Ex. 45 at 195. This exception to the arbitration agreement comes directly from the JAMS Consumer Arbitration Minimum Standards, which provide that "no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction." O'Mara Reply Decl. Ex. F. Plaintiffs do not argue that their claims fall within this exception, nor do they claim that the exception is somehow unclear.[22] Plaintiffs' argument is meritless.

## C.   The Arbitration Clause Is Not Unconscionable

Because the delegation clause is not unconscionable, Plaintiffs' challenges to the enforceability of the arbitration clause must be sent to the arbitrator. *See Brennan*, 796 F.3d at 1132. But in any event, those challenges are meritless.

Regarding procedural unconscionability, Plaintiffs' argument that the arbitration clause is procedurally unconscionable is the same as their argument that

---

[21] In addition, contrary to Plaintiffs' assertion, a user whose account has been cancelled does in fact have "preliminary injunctive power available to her" (Opp. at 33) because the arbitrator is authorized to grant injunctive relief. *See, e.g.*, Tobias Decl. Ex. 45 at 195.

[22] In the rare case of a genuine dispute about the applicability or interpretation of the small claims exception—which, to be clear, is *not* this case—those issues would be for the arbitrator to decide pursuant to the clear, unmistakable delegation clause, just like any other "dispute[] arising out of or relating to the interpretation, applicability, enforceability, or formation" of the agreement. Tobias Decl. Ex. 45 at 195.

1   the delegation clause is procedurally unconscionable, and thus fails for all of the

2   reasons explained above.  *See* Opp. at 30-32; *supra* Section V.B.1.

3           With respect to substantive unconscionability, Plaintiffs raise two additional

4   arguments regarding the arbitration clause: (1) they claim that the limitation of

5   liability provision in the Terms limits the recovery available to consumers but not

6   Defendants, and (2) they argue, in a single sentence, that the arbitration clause

7   "waives a jury trial even with respect to non-arbitrable claims."  Opp. at 34-35.[23]

8   Both arguments fail based on the plain language of the Terms.  The limitation of

9   liability provision expressly states that it applies only to the extent permitted by

10  applicable law.  *E.g.*, Tobias Decl. Ex. 45 at 195 ("The provisions of this paragraph

11  will not apply to the extent applicable law permits the recovery of damages,

12  attorneys' fees or costs otherwise prohibited under this paragraph.").  None of the

13  cases Plaintiffs cite involved a general limitation of liability provision, let alone one

14  with a similar qualification.  *See* Opp. at 34-35.  And nothing in the Terms requires

15  users "to waive in advance their right to a jury trial for any dispute for which

16  arbitration is not allowed."  *Doherty v. Roseville Heritage Partners*, 47 Cal. App.

17  5th 93, 107 (2020).  Rather, the Terms inform users that "[t]here is no judge or jury

18  *in arbitration*," and thus, by agreeing to arbitration, they are "agreeing to waive any

19  right to a jury trial."  Tobias Decl. Ex. 45 at 195-96 (emphasis added); *see Grafton*

20  *Partners v. Super. Ct.*, 36 Cal. 4th 944, 955 (2005) ("[A]rbitration agreements are

21  distinguishable from waivers of the right to jury trial in that they represent an

22  agreement to avoid the judicial forum altogether.").

23  **VI.   CONCLUSION**

24          For the foregoing reasons, Defendants respectfully request that the Court

25  compel individual arbitration and dismiss or, in the alternative, stay this action.

26

27

28  [23]  Plaintiffs also repeat their argument that the conditional license exception is one-
    sided.  Opp. at 34.  It is not, for the reasons explained in *Dickey* and § V.B.2, *supra*.

1    Dated:  April 16, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

LATHAM & WATKINS LLP

By: _Timothy L. O'Ma_____
Timothy L. O'Mara

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095
tim.o'mara@lw.com

*Attorneys for Defendants Ticketmaster
L.L.C. and Live Nation Entertainment,
Inc.*

REPLY ISO AM. MOT.
TO COMPEL ARBITRATION
CASE NO. 2:20-CV-03888-GW-GJS