UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3888-GW-GJSx | Date | September 20, 2021 |
|---|---|---|---|
| Title | *Mitch Oberstein, et al. v. Live Nation Entertainment, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

PROCEEDINGS:     **IN CHAMBERS - RULING ON DEFENDANTS' AMENDED MOTION TO COMPEL ARBITRATION [84]**

Attached hereto is the Court's Ruling on Defendants' Motion to Compel Arbitration. The Court GRANTS the motion to compel arbitration and stays the claims against Defendants.

The Court sets a status conference for September 27, 2021 at 8:30 a.m.

:

Initials of Preparer     JG

*Mitch Oberstein et al v. Live Nation Entertainment, Inc. et al*; Case No. 2:20-cv-03888-GW-(GJSx)
Ruling on Defendants' Amended Motion to Compel Arbitration

I.     **Background**

Plaintiffs bring this putative nationwide class action against defendants Ticketmaster LLC and Live Nation Entertainment, Inc. (collectively, "Defendants") alleging various anticompetitive practices in violation of Sections 1 and 2 of the Sherman Act.   *See* First Amended Complaint ("FAC") ¶¶ 137-201.   Plaintiffs allege that since their merger in 2010, Defendants have capitalized on their dominance in: (1) primary ticketing services for major concert venues, (2) secondary ticketing services for major concert venues, and (3) concert promotion services for major concert venues to acquire "unparalleled dominance within the live music industry."  *See id.* ¶¶ 41-76.  As a result, Mitch Oberstein, Gary Matty, and Sophie Burke, the named plaintiffs (collectively, "Plaintiffs"), allege that they paid "supracompetitive fees on primary and secondary ticket purchases" from the Defendants' online platforms.  *See id.* ¶¶ 1, 20-22.

Defendants moved to compel arbitration claiming that all users of their websites, including Plaintiffs, affirmatively agreed to be bound by the website's terms of use ("TOU") every time a user creates an account, signs into the account, or purchases a ticket.   *See* Defendants' Motion to Compel, ECF No. 25.   Defendants allege that the TOUs contain mandatory arbitration clauses that cover Plaintiffs' claims.  Before responding to the motion to compel, Plaintiffs sought limited discovery on click-data from Defendants' websites to see what proportion of users clicked on the links to view Defendants' TOUs, as well as related interrogatories and depositions of certain defense witnesses who provided declarations in support of the motion to compel arbitration.  *See* ECF No. 29.  This Court initially granted Plaintiffs request with skepticism but reconsidered allowing discovery on click-data after the Ninth Circuit Court of Appeals reversed the only decision that supported the use of click-data for such purposes.  *See* ECF Nos. 35, 46; *Arena v. Intuit, Inc.*, 444 F. Supp. 3d 1086 (N.D. Cal. 2020), *rev'd*, *Dohrmann v. Intuit, Inc.*, 823 F. Appx. 482 (2020).  The interrogatories and depositions were allowed to continue, and the Court compelled Defendants to produce documents relating to the UX/UI design processes of the websites as they affected the TOUs.  *See* ECF No. 59 at 3-5.

Before the Court is Defendants' Amended Motion to Compel Arbitration ("MTC").  *See*

ECF No. 84.  Plaintiffs have provided an Opposition ("Opp.") under seal, *see* ECF No. 92-1, and Defendants have provided a Reply, *see* ECF No. 103.  For the reasons set out below, the motion is **GRANTED**.

    A.  Factual Background

Two named plaintiffs have been added and one removed since the initial complaint.  *See* Compl. ¶¶ 20-21; FAC ¶¶ 20-22.[1]  Mitch Oberstein of California remains a named plaintiff and made over 40 primary ticket purchases on the Ticketmaster desktop site, the Ticketmaster mobile site, and the Live Nation desktop site since 2010.  *See* FAC ¶ 20; Declaration of Shawn Moon ("Moon Decl."), ECF No. 86, ¶¶ 3-7.  Oberstein made his purchases on two accounts, one created in July 2007 and one in November 2016.  Moon Decl. ¶ 7.

Sophie Burke of Massachusetts is a new named plaintiff and she purchased six primary tickets from the Ticketmaster desktop site since 2010.  *See* FAC ¶ 22; Moon Decl. ¶¶ 8-10. Burke made her purchases on an account created in June 2008.  Moon Decl. ¶ 11.  Gary Matty of West Virginia is also a new named plaintiff and made two primary ticket purchases on the Ticketmaster desktop site since 2010.  *See* FAC ¶ 21; Moon Decl. ¶¶ 13-15.  Matty made his purchases on an account created in September 2006.  Moon Decl. ¶ 17.

Defendants assert that all users of the Live Nation and Ticketmaster's websites, including Plaintiffs, are required to affirmatively accept the website's TOU at several points; specifically, when creating of an account, when signing into an account, and when completing a ticket purchase.  *See* Declaration of Kimberly Tobias ("Tobias Decl."), ECF No. 85, ¶¶ 4-48.  For example, Defendants provide the following screenshot evidence from the Ticketmaster website where a user must agree to the TOU when signing in or placing an order.

---

[1] Olivia Van Iderstine was the initially-named plaintiff in the original complaint but she was dropped in the FAC.  *See* Compl. ¶¶ 20-21; FAC ¶¶ 20-22.

*See* Tobias Decl. ¶¶ 8, 10-15, Exhs. 4, 11.

Plaintiffs allege that they had never seen or read the TOUs or noticed the language stating that they agreed with the TOUs by taking actions on the website.  *See* Declarations of Mitch

3

Oberstein, Gary Matty, and Sophie Burke ("Plaintiffs Decl."), ECF No. 96-98, ¶¶ 4-6.   In addition, Plaintiffs provide an expert declaration by Dr. Anthony D. Andre who submits that the Defendants purposefully employed "dark patterns" in designing their TOUs to make them less conspicuous.   Dr. Andre lists several design flaws such as the lack of underlining for hyperlinks, the lack of dedicated real estate, the lack of a checkbox or other forcing feature, and the use of text with reduced "opacity" that ultimately makes the TOUs less conspicuous to users.   *See* Declaration of Dr. Anthony D. Andre ("Andre Decl."), ECF No. 92-2, ¶¶ 12-17, 22-30, 45-89.

## II.     Legal Standard

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010).   A party aggrieved by the refusal of another party to arbitrate under a written arbitration agreement may petition the court for an order compelling arbitration as provided for in the parties' agreement.   *See* 9 U.S.C. § 4.   "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original).   "The court's role under the [FAA] is therefore limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).   "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)).   "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quotations omitted).   Both parties briefed issues under California contract law and provided supplementary briefing on the differences between Massachusetts and California law regarding mutual assent in the context of online agreements.   *See* ECF Nos. 110, 111.

4

### III.  Discussion

At the outset of this action, the Court noted that Plaintiffs would be fighting an uphill climb because this Court and others, including the Ninth Circuit Court of Appeals, have compelled arbitration of claims against either Ticketmaster or Live Nation based on the very same websites as involved herein.  *See* ECF No. 35 at 1-2; *see, e.g.*, *Lee v. Ticketmaster LLC*, 817 F. Appx. 393, 394-95 (9th Cir. 2020) (affirming a holding that "Ticketmaster's website provided sufficient notice for constructive assent, and therefore, there was a binding arbitration agreement between [plaintiff] and Ticketmaster"); *Dickey v. Ticketmaster LLC*, No. 18-cv-09052-GW, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019) (upholding the same arbitration agreement); *Nevarez v. Forty Niners Football Company, LLC*, No. 16-cv-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017) (upholding the same arbitration agreement); *Himber v. Live Nation Worldwide, Inc.*, No. 16-cv-05001, 2018 WL 2304770, at *4 (E.D.N.Y. May 21, 2018) (upholding the arbitration agreement on the Live Nation website).

Plaintiffs, nonetheless, maintain that they have bolstered novel arguments concerning whether the arbitration agreement properly identified the Defendants as parties and whether Plaintiffs' claims fall within an exception to the arbitration agreement.  Plaintiffs further assert that they never assented to the TOUs, relying on a declaration by their expert to argue that the Defendants' websites were purposely designed to make the TOUs less conspicuous.  Finally, Plaintiffs argue that arbitration and delegation clauses are unconscionable.  *See* Opp. at 1-2.  The Court will address each of Plaintiffs' arguments in turn.

A.  Failure to Properly Identify the Correct Entities

Plaintiffs initially argue that the Defendants' TOUs do not properly identify the specific parties, instead relying on ambiguous words like "us," "we," and "our."  *See* Opp. at 9.  Plaintiffs assert that because the terms fail to specifically identify any corporate entity or party, they are invalid.  Defendants counter that the TOUs repeatedly refer to "Live Nation" and "Ticketmaster" in their TOUs even if they do not always recite the full legal entity name.  *See* Reply at 2-5.  Defendants also argue that the TOUs appear on the Ticketmaster and Live Nation websites, which provide additional information about the corporate entities on pages like the "Who We Are" page.  *See* Reply Declaration of Timothy L. O'Mara ("O'Mara Reply Decl."), Exhs. A-C.  Finally, Defendants assert that the arbitration clause explicitly identifies "Live Nation Entertainment, Inc.," the formal corporate name of Defendant Live Nation, and the parent of

5

Defendant Ticketmaster.  *See* Reply at 4; Tobias Decl., Exhs. 41-62.

The Court agrees with Defendants and holds that the TOUs are not invalid for failing to identify the contracting corporate entity or party.  First, Defendants argument stumbles factually because the arbitration clause in the TOU explicitly identifies Defendant "Live Nation Entertainment, Inc.," the parent of Defendant Ticketmaster and the primary Live Nation entity. *See* Reply at 4; Tobias Decl., Exhs. 41-62 ("To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to: Live Nation Entertainment, Inc."). Second, under California law, contracts do not need to repeatedly recite the full corporate entity name in order to bind parties, it simply needs to make it possible to identify them.  *See Jackson v. Grant*, 890 F.2d 118, 121 (9th Cir. 1989); Cal. Civ. Code § 1558.  Here, the TOUs were housed on the Ticketmaster and Live Nation websites, which provided additional information on the Defendants' corporate entities.  *See* O'Mara Reply Decl., Exhs. A-C.  The TOUs repeatedly made references to "Ticketmaster" and "Live Nation," and their primary entities Ticketmaster LLC and Live Nation Entertainment, Inc. are Defendants in this action.  *See* Tobias Decl., Exhs. 41-62.  And as stated before, Defendant Live Nation Entertainment, Inc. is referenced specifically in the arbitration clause.  The Court finds that users could reasonably have identified the parties of the TOUs as the primary entities for Ticketmaster and Live Nation based on the TOUs and the surrounding information.

Plaintiffs fail to provide any persuasive authority where a court has invalidated an arbitration agreement in similar circumstances.  Plaintiffs' submitted cases generally do not come close to the situation they allege, where common names were used instead of the full corporate entity name in a TOU.  *See e.g., Lee v. Intelius Inc.*, 737 F.3d 1254, 1260 (9th Cir. 2013) (where the party seeking to enforce contract was never mentioned at all and another entity's logo and name were prominently displayed and mentioned throughout the text); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 4685039, at *11 (C.D. Cal. July 17, 2017) (where a court found that a consumer agreeing to terms for one service, the Amazon Echo, could not be reasonably expected to know they were also agreeing to terms for a wholly separate service, *i.e.* Audible); *Westlye v. Look Sports, Inc.*, 17 Cal. App. 4th 1715, 1727 (1993) (where the party seeking to enforce the contract was not even mentioned in the contract).  And the arbitration clause in this instance actually did contain the full corporate entity name for Live Nation.

6

B.  Lack of Assent to TOU

Plaintiffs claim that they never agreed to the TOUs while purchasing their tickets.  They submit that they had no actual knowledge of the terms and never noticed the links to the TOUs on the Defendants' websites.  *See* Plaintiffs Decl. ¶¶ 4-6.  To address the question of mutual assent during online transactions, we must turn to the law of Internet-based contract formation.

"In the context of online agreements, the existence of mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement."  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019).  Contracts formed over the Internet "come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175-76.  "Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly . . . [a] party instead gives his assent simply by using the website."  *Id.*  Courts are "more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement – that is, where the user is required to affirmatively acknowledge the agreement before proceeding with the use of the website."  *Id.* As to browsewrap situation, it has been held that:

> Where . . . there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract . . . . Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage.

*Id.* at 1177 (citations omitted).

a.  *Differences Between California and Massachusetts Law*

As a threshold issue, the parties dispute whether Massachusetts law differs from California law on the issue of assent in the context of online agreements.  Plaintiff Burke is a citizen of Massachusetts and her claims are governed by Massachusetts law.  *See* FAC ¶ 22. Plaintiffs submit that: 1) California courts have recognized the difference between Massachusetts and California law on the issue of assent; 2) Massachusetts courts are more likely to require clickwrap agreements; 3) Massachusetts law considers the use of clickwrap in other contexts but not requiring clickwrap for acceptance of a TOU as demonstrating a lack of assent; and 4)

Massachusetts law considers the fact that Defendants displayed the hyperlinks to the TOU more prominently than the surrounding text as demonstrating lack of assent. *See* Plaintiffs' Supplemental Statement in Support of Amended Motion to Compel Arbitration ("Supp.") at 1-3, ECF No. 111. Plaintiffs rely principally on *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018) and *Kauders v. Uber Techs., Inc.*, 486 Mass. 557 (2021) for their arguments. Defendants submit that Plaintiffs have already conceded that Massachusetts and California law were in accord in their Opposition, where Plaintiffs noted that *Kauders* cited and applied Ninth Circuit authority. *See* Opp. at 16 n.20 (stating that *Kauders* was consistent with California law as it cited *Wilson v. Huuuge*, 944 F.3d 1212 (9th Cir. 2019)). Defendants argue that both Massachusetts and California apply a reasonableness standard that accounts for the totality of the circumstances and neither state requires clickwrap as a matter of law. *See* Defendants' Supplemental Statement in Opposition to Amended Motion to Compel Arbitration ("Supp. Opp."), ECF No. 110 at 2-3.

The Court has reviewed the supplemental briefing and finds that California and Massachusetts law are not materially different on the issue of online assent. *Kauders*, the most recent Massachusetts Supreme Court opinion on assent in online agreements, relies on the *Ajemian* decision to outline a reasonableness standard that is ultimately based in California law. *See Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574-75 (2017) (citing the reasonableness standard from *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002), which applied California law). The Court finds that *Kauders* recites substantially the same standard as used in California. *Compare Kauders*, 486 Mass. at 572-73 ("We conclude that this two-prong test, focusing on whether there is reasonable notice of the terms and a reasonable manifestation of assent to those terms, is the proper framework for analyzing issues of online contract formation."*), with Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (holding under California law that "an agreement to arbitrate exists where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law."). Both standards also require a "fact-intensive inquiry" that examines the totality of the circumstances. *See Kauders v. Uber Techs., Inc.*, 486 Mass. at 573 (citing *Meyer*, 868 F.3d at 76, which applies California law).

Plaintiffs' most persuasive arguments for a difference in Massachusetts law are their citations to recent California district court decisions that found that the *Cullinane* decision departs from Ninth Circuit reasoning. *See West v. Uber Techs.*, No. 18-CV-3001, 2018 WL

5848903, at *4 (C.D. Cal. Sept. 5, 2018) ("The Court agrees with Defendants that the *Cullinane* decision departs dramatically both from what other courts have found regarding Uber's registration process, and from the overall legal landscape regarding assent to online agreements"); *Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *4 (N.D. Cal. Oct. 15, 2018).   The Court notes, however, that the differences in results could reflect the fact-intensive nature of the inquiry and the likelihood that courts determining the factual issues concerning reasonableness were presented with differing evidence on notice and conspicuousness.   Indeed, that was Plaintiffs' own argument for why this Court should deviate from previous decisions that compelled arbitration on these very same websites.  *See* Opp. at 12-13.   Furthermore, since the decision in *Cullinane* was issued, the First Circuit has clarified that *Cullinane* did not "substantially change" the applicable law and stated that *Cullinane* applied the same standard that "had been adopted for online contracts in a 2013 Massachusetts case, *Ajemian*."  *See Bekele v. Lyft, Inc.*, 918 F.3d 181, 187 (1st Cir. 2019).   And as stated previously, *Ajemian* traces its standard to *Specht,* 306 F.3d at 28-30, which was applying California law. The First Circuit also indicated that *Cullinane* did not represent a split from other circuits, stating that "the reasonable notice standard has governed online contracts *across jurisdictions* since the early days of the internet, and the inquiry has *always* been context- and fact-specific."  *Bekele*, 918 F.3d at 187 (emphasis added)*.*

Plaintiffs' other arguments are unavailing as they merely reflect the fact that the inquiry has always been context-driven and fact-specific.   For example, Plaintiffs argue that under Massachussetts law, "the fact that Defendants displayed hyperlinks to the Terms of Use more prominently than the textual notice before the hyperlinks demonstrates lack of assent."  Supp. at 3.   The Court reads *Kauders* differently.   The *Kauders* court was not stating a general proposition of law but issuing a specific finding as to the Uber website, where "the connection between the creation of the account and the terms and conditions was also *somewhat oddly displayed in the two-part format*" such that it was improper to display the "significant information (*i.e.*, that by creating the account, the user expresses his or her agreement) . . . less prominently than other information."  *Kauders*, 486 Mass. at 576 (emphasis added).   The same argument does not apply to the Ticketmaster website because the Ticketmaster website did not display the connection between the creation of the account and the terms and conditions in an odd two-part format.   The Court rejects Plaintiffs' attempts to turn findings from a context-driven and fact-specific inquiry

into general statements of law.

The Court thus finds that California and Massachussetts law are not materially different on the issue of online assent.

b. *Ticketmaster and Live Nation webpages*

This Court and several others have held that these very same Ticketmaster and Live Nation webpages have designs that provide constructive notice of the TOUs such that the a user manifests assent by completing the account creation process, signing in to an account, or completing a purchase. *See e.g., Lee*, 2020 WL 3124256, at *2; *Dickey*, 2019 WL 9096443, at *7; *Nevarez*, 2017 WL 3492110, at *8. Defendants assert that they provide constructive notice of the TOUs repeatedly to users during at least three independent junctures of their website: (1) when a user creates an account, (2) when a user signs in to an account, and (3) when a user completes a purchase. *See* Amended Motion to Compel Arbitration ("MTC"), ECF No. 84, at 3-4; Tobias Decl. ¶¶ 4-19, 22-28, 31-37, 40-46. For example, when a user attempts to create an account, users must provide some personal information then click a button to create the account or proceed to another page of the account creation process. *See e.g.,* Tobias Decl. ¶¶ 5-6, 22-23, 31-32, 40-41, Exhs. 1-3, 23, 28-29, 36. Conspicuously placed right above the button that the user must press is text that indicates that the user agrees to the TOU by pressing the button. The text "Terms" or "Terms of Use" are in a different blue color, distinguishing the link from the surrounding text, and clicking on the link sends the user to a page on the website containing the full TOU. Similarly conspicuous text is placed above the button that users must press to sign in or finalize a purchase. *See e.g.,* Tobias Decl. ¶¶ 7-19, 24-30, 33-39, 42-46, Exhs. 4-19, 22-25, 30-33, 37-38.

The Defendants' websites are not pure clickwrap agreements because they do not present the full text of the TOU to users and force them to agree, instead requiring an extra click to access the TOU. *See e.g., Dickey*, 2019 WL 9096443, at *6-*7. Nonetheless, as we noted previously, in this Circuit, courts have "consistently enforced" arbitration clauses contained in TOUs on websites with similar designs to that of the Defendants. *Id.* at *7. Here, Plaintiffs have provided additional evidence against the Defendants' websites in the form of an expert declaration from Dr. Andre. Dr. Andre provides several suggestions on how the Defendants sites could improve the design of their website to enhance visibility of the TOUs, including suggestions that the TOU hyperlinks need to be underlined, that the TOUs needs dedicated real

estate, and that the TOUs should require a click on a checkbox to confirm assent.  Andre Decl. ¶¶ 20-39.  Dr. Andre further argues that the text linking to the TOU was set at 65% opacity (where 0 is invisible and 50% is half-transparent) in an attempt to deliberately make the text less conspicuous.  *See* Andre Decl. ¶¶ 57-64.

The Court finds Plaintiffs' expert declaration ultimately immaterial.  While Dr. Andre presents several suggestions that are likely to improve visibility of the TOUs, the Court finds that the Defendants' websites already provide adequate constructive notice as is.  The text linking to the TOU is placed conspicuously close to the buttons that the users are required to press to sign up, sign in, or complete a purchase.  The actual hyperlink that navigates to the TOU is conspicuously blue, while the surrounding text is black.  The Court is also unconvinced by Dr. Andre's arguments regarding opacity because, in the Court's view, the added opacity sometimes serves to highlight the blue links as the added opacity turns the surrounding text more gray than black, creating more contrast and visibility for the blue links that navigate to the TOU and generally drawing attention to the language pointing to the TOU.  *See e.g.,* Andre Decl., Appendix D-E.

Plaintiffs further argue that the inclusion of their expert declaration in addition to the screenshots of Defendants' websites turn the issue of conspicuousness into one of fact.  *See* Opp. at 14-22.  And if conspicuousness is a question of fact, Plaintiffs submit that they must receive "the benefit of all reasonable doubts and inferences that may arise."  *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).  While the Court agrees that Plaintiffs must receive the benefit of all reasonable inferences, the Court found the expert declaration and Plaintiffs other evidence ultimately immaterial because the Court's review and analysis of the screenshots of the websites themselves (and the decisions of other courts) outweighed considerations brought to the Court's attention by Dr. Andre and the concomitant evidence.  Ultimately, the Court joins many others in again finding that the Defendants' websites provided sufficient constructive notice as required for mutual assent.

C.  Conditional License Exception

Plaintiffs argue that their claims fall into the conditional license exception located in the TOUs.  The third section of the Defendants' TOUs states that a conditional license is granted to users to view the site and its contents as long as the users agree not to engage in certain behavior, like sending viruses or using automated bots.  *See, e.g.,* Tobias Decl., Exhs. 41-62.  The

11

arbitration clause further states that "[i]f a claim involves the conditional license granted to you . . . either of us may file a lawsuit in federal or state court located in Los Angeles, California." *Id.* Defendants counter that whether the conditional license exception applies is not in the purview of this Court but has been delegated to the arbitrator. Specifically, the arbitration clause in the TOUs contain a delegation clause that states "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of this Agreement." *See, e.g.,* Tobias Decl., Exhs. 41-62.

"A court is normally tasked with two gateway issues when deciding whether to compel arbitration under the FAA: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Morgan v. Glob. Payments Check Servs., Inc.*, No. 2:17-CV-01771-JAM-CMK, 2018 WL 934579, at *2 (E.D. Cal. Feb. 15, 2018) (quoting *Chiron*, 207 F.3d at 1130). "But the parties can agree to expressly delegate these gateway issues to an arbitrator, in which case an arbitrator, rather than a court, must decide the issues." *Id.* A court must determine whether the underlying agreement "clearly and unmistakably" delegated the questions of arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal quotation marks and citations omitted). Recently, the Supreme Court reiterated these points. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, —— U.S. ——, 139 S. Ct. 524, 529 (2019) (explaining that the "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). The Supreme Court emphasized that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *See id.*

Here, the Court is unconvinced that it should deviate from its previous holding that the delegation clause in the TOUs meets the requisite "clear and unmistakable" standard, and the Court may not override the parties' choice to delegate questions of arbitrability to the arbitrator. *Dickey*, 2019 WL 9096443, at *8. Multiple other courts have looked at the exact same language and also confirmed that it satisfies the "clear and unmistakable" standard. *See, e.g.*, *Lee v. Ticketmaster L.L.C.*, No. 18-CV-05987-VC, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019),

*aff'd,* 817 F. App'x 393 (9th Cir. 2020) ("The parties 'clearly and unmistakably' delegated authority to determine threshold questions to the arbitrator."); *Nevarez*, 2017 WL 3492110, at *11 (same); *Himber*, 2018 WL 2304770, at *5 (same).  Finding no reason to modify its holding, the Court concludes that whether the conditional license applies is a question contractually delegated to the arbitrator.

    D.  Unconscionability

        Finally, Plaintiffs assert that the delegation clause and arbitration clause in the Defendants' TOUs are unenforceable because they are unconscionable.  *See* Opp. at 29. Plaintiffs submit that the decision in *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 127 (2019) provides a "new rule" stating that the more procedural unconscionability is present, the less substantive unconscionability is required.[2]  *See* Opp. at 30.  As a threshold matter, because we found that the delegation clause clearly and unmistakably delegates arbitrability to the arbitrator, the Court's unconscionability inquiry is limited to the delegation clause instead of the arbitration clause as a whole.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) ("Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement to delegate arbitrability – the Delegation Provision – is itself unconscionable"); *Nevarez,* 2017 WL3492110*,* at *11.

        a.  *Procedural* Unconscionability

        In order to prove unconscionability, Plaintiffs must show that the delegation clause was procedurally and substantively unconscionable.  The procedural component of unconscionability "focuses on the factors of oppression and surprise."  Patterson v. ITT Consumer Fin. Corp., 14 Cal. App. 4th 1659, 1664 (1993) (citations omitted).  "Oppression results where there is no real negotiation of contract terms because of unequal bargaining power."  Id.  "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms."  Id.

        In support of their argument for procedural unconscionability, plaintiffs argue that: (1) the delegation clause is part of a contract of adhesion and (2) the practice of "ticket holds" causes

---

[2] The "sliding scale rule" in regards to procedural versus substantive unconscionability is hardly new as it has been for decades.  *See, e.g., Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000) ("In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.").

oppression by applying pressure through a countdown timer presented to the user. While the Court agrees that the delegation clause lies within a contract of adhesion, the Court finds no other indicators of surprise or oppression and finds that there is generally a low degree of procedural unconscionability.

The Court does not give much credence to Plaintiffs argument that the practice of "ticket holds" causes oppression. Defendants' websites allegedly displayed a timer after a user selected particular tickets for purchase. See Andre Decl. ¶¶ 53, 76-77. The Defendants would reserve those particular tickets, or place a "ticket hold," for the amount of time displayed on the timer, allowing users to complete their purchase with the chosen tickets and not allowing the tickets to be purchased by someone else. See Reply Declaration of Kimberly Tobias ("Tobias Reply Decl."), ECF No. 105, ¶¶ 5-8. Plaintiffs argue that the countdown timer applied extra pressure and did not allow them to review the TOUs before making a purchase. See Opp. at 31. Plaintiffs continue that the "loss of the reservation/hold was a real threat because tickets for desirable seats at popular shows were in high demand and sold out in minutes." Id.

The Court does not find the practice of "ticket holds" oppressive and believes that it could often have the opposite effect. If desirable seats at popular shows sold out in minutes, as Plaintiffs claim, the "ticket hold" could actually increase the amount of time that a user has to complete their purchase before the desirable tickets are sold out. See Opp. at 31. Without a "ticket hold," a user would have to choose their tickets and finalize their purchase as quickly as possible for fear of tickets selling out as the purchase was being completed. But with the "ticket hold," a user is guaranteed up to fourteen minutes to complete their purchase after choosing tickets they are interested in. See Tobias Reply Decl. ¶ 6. The Court also recognizes that Plaintiffs were given constructive notice of the TOUs at several junctures and could have reviewed the TOUs at their leisure during account creation, account sign in, or while navigating the website, not only when making a purchase. There is also little indication of surprise here as the arbitration clause in the TOU has its own section below an underlined title, and the delegation clause is clearly presented in its own paragraph. See, e.g., Tobias Decl., *Exhs. 41-43.*

In addition, Plaintiffs could choose not to attend these specific recreational events or purchase tickets on the secondary market. This is distinguishable from cases involving a person's livelihood, like *OTO, L.L.C. v. Kho,* where an employee was forced to sign a contract at his place of work in order to keep his job. *See OTO*, 8 Cal. 5th at 127. As this Court concludes

that there was a low level of procedural unconscionability, the delegation clause must be enforced unless there is a heightened finding of substantive unconscionability. *See Loewen v. Lyft, Inc*., 129 F. Supp. 3d 945, 956 (N.D. Cal. 2015) ("When, as here, there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.")

        a. <u>*Substantive* Unconscionability</u>

    Substantive unconscionability arises when a provision is so "overly harsh or one-sided" that it falls outside the "reasonable expectations" of the non-drafting party. *Gutierrez v. Autowest, Inc., 114 Cal. App. 4th 77 at 88 (2003)* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 113-14 (2000))*. It is not enough that terms are slightly one-sided or confer more benefits on a particular party; a substantively unconscionable term must be so unreasonable and one-sided as to "shock the conscience." Am. Software, Inc. v. Ali, 46 Cal. App. 4th 1386, 1391 (1996). Plaintiffs argue the delegation clause is substantively unconscionable because it is one-sided and because Ticketmaster can also avail themselves of self-help measures by removing users from their websites. This Court finds these arguments unpersuasive and far from the required level of shocking the conscience.

    First, the Court is unconvinced by Plaintiffs argument that the delegation clause is one-sided. The delegation clause explicitly applies to both parties' claims regarding the conditional license. If Ticketmaster were to bring an action in state or federal court allegedly concerning the conditional license, the user could likewise delegate all questions regarding arbitrability to an arbitrator. See *Dickey, 2019 WL 9096443, at *9.* Similarly, the Court is unconvinced by Plaintiffs' arguments that the delegation clause is substantively unconscionable because Defendants could also remove users from their websites at any time. The fact that Defendants could remove certain users from their website for violating their TOUs does not make a clause delegating certain issues to arbitration unconscionable. Unlike the cases Plaintiffs cite, this is not a situation where Plaintiffs are forced to arbitrate certain claims while Defendants do not. *See, e.g., Flores v. Transamerica HomeFirst, Inc*., 93 Cal. App. 4th 846, 854 (2001) (plaintiff was forced into arbitration while defendant had different options); *Swain v. LaserAway Med. Grp., Inc*., 57 Cal. App. 5th 59, 73 (2020) (plaintiff was forced into arbitration while defendant did not). The delegation clause here applies equally to both parties. Plaintiffs also have self-help

options available as they can purchase tickets from a secondary seller or attend different recreational events.   The Court does not find the heightened substantive unconscionability necessary to invalidate the delegation clause.

In conclusion, the Court does not find the delegation clause unconscionable.

## IV.   Conclusion

Based on the foregoing discussion, the Court **GRANTS** the motion to compel arbitration and stays the claims against Defendants.   The Court chooses to stay the action pending arbitration rather than dismissing all claims because the arbitrator will determine questions of arbitrability that may lead this case back to federal court.[3]   *See MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014) (emphasizing the "preference for staying an action pending arbitration rather than dismissing it").

---

[3] The Court will (in conjunction with the parties) set a status conference to determine whether the arbitration is being speedily sought and, once the arbitration proceedings have begun, will administratively close the case with the Court retaining jurisdiction to deal with the arbitration award, if necessary.